Thomas Jefferson HALL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–243.

Court of Criminal Appeals of Oklahoma.

Nov. 21, 1974.

Barry Albert, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Byron L. Wilhite, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

This is an appeal from the District Court, Cleveland County, Case No. CRF–73–351, wherein Thomas Jefferson Hall, appellant hereinafter referred to as defendant, was charged, tried and convicted for the crime of Incest, in violation of 21 O.S.1971, § 885. His punishment was fixed by a jury at a term of five (5) years imprisonment and a timely appeal has been perfected to this Court.

We do not deem it necessary to recite the facts as this cause requires reversal.

Defendant's third proposition asserts the trial court committed fundamental and prejudicial error in permitting the defendant's older daughter to testify in rebuttal that the defendant had sexual intercourse with her, the same constituting evidence of other purported crimes too remote in time, incompetent, irrelevant and immaterial to be admissible.

The record reveals that the defendant filed a Motion in Limine to prohibit the State from introducing the testimony of the older daughter in regard to alleged sexual intercourse she had with the defendant, thus preserving this proposition for appellate review.

Upon the defendant's taking the stand in his own defense, the State cross-examined him regarding alleged prior sexual conduct with his older daughter. The defendant denied ever having had sexual relations with his older daughter. Thereafter, in rebuttal, the State called the older daughter wherein she testified to certain prior sexual relations with her father.

The pertinent portions of her testimony are as follows:

"Q. (By Mr. Edmondson) When did you last live with the Defendant, Thomas Hall?

"A. The last time I had lived with my father he had attempted to rape me, and I had had it . . . . I had had it up to here with him." (Tr. 436)

\* \* \* \* \* \*

"Q. All right. When was it that you had sexual intercourse with him . . . . if at all?

"A. It has happened . . . . I would say it happened at least seventeen or eighteen times, and each time it was by threat." (Tr. 437)

On recross examination Pamela Jean Wackerly [1] testified to the following:

"Q. How did your father have sexual intercourse with you?

"A. Okay. I remember the first time exactly.

"Q. Was it by force?

"A. Yes, it was by force; each time it was by force. He would send the kids off, give them money, and send them off to the little cafe or the station right down the street, and he would lock the door so that when they could come back, they would have to beat on the door. And when he would come and open the door, he would say . . . . the kids would say, 'Why was the door locked?'

---

1. The prosecutrix's older sister's testimony on rebuttal.

And he would say, 'I was just playing a little game.'

"Q. You didn't tell your mother about this?

"A. I couldn't tell anybody. I wasn't even allowed outside. I couldn't even go to . . . .

"Q. How long ago was this?

"A. This has been quite awhile.

"Q. You say 'quite awhile'. What reference in time do you . . . .

"A. It has been a couple of years.

"Q. Two years ago?

"A. No, I would say . . . . it has been about . . . . . it has been about two years before I confessed it to my mother.

"Q. Well, how long from now has it been? When was it?

"A. I would say about two and a half years.

"Q. You weren't living with your father two and a half years ago, were you?

"A. I lived with my father until I was . . . . . I would say it was about three years.

"Q. All right, three years ago would be October of 1970, and that would be after your father and mother were divorced, and you weren't living with him at all at that time, were you?

"A. I had . . . . I have got . . . . it has been a long time. I . . . . .

"Q. All right. Right now how long has it been?

"A. It has been a long time. I don't know the time and the date, and . . . . I mean how many years it has been. (Tr. 438–440)

\*   \*   \*   \*   \*   \*

"Q. Well, you said it happened seventeen or eighteen times.

"A. It has.

"Q. All right. All of these times were after . . . .

"A. It happened when they were married . . . . when they were married.

"Q. All right. So your testimony is then that it didn't happen three years ago. Is that right?

"A. Do what?

"Q. It was longer than three years ago?

"A. Yes, sir.

"Q. Was it longer than four years ago?

"A. Do you mean how long it was to the period of the last time he got me? Is that what you mean?

"Q. I am asking you when this occurred that you have testified about.

"A. Oh, it started . . . . it was going on while they were married. I remember them filing for a divorce, and I was with my mother at that time. So it has been quite awhile.

"Q. All right. So it would not have been possible for you to have gotten off of a school bus and gone directly to your mother's house, would it?

"A. Yes, I did, because when I left my mother's . . . . I mean when I left my father's the last time, I couldn't take any more of it.

"Q. Well, you never lived with your father . . . .

"A. I did.

"Q. . . . . . after your mother and father were divorced.

"A. They were just separated, and my mother . . . . we had gone to Court over it, or something, and anyway she was working, and I was . . . . . us kids were still over there. And Debbie was over. She had just left the house, because he had been having an affair with Debbie for a long time, and she had just left the house, and he and Debbie had gotten into a fight.

"Q. All right. Now, what year was this?

"A.  I don't know.

"Q.  You can't fix the year?

"A.  No.  It has been quite awhile back."  (Tr. 442–444)

The defendant argues the State accomplished indirectly what it could not do directly by subjecting the defendant to a highly prejudicial cross-examination with what ultimately became the basis for calling the defendant's older daughter in rebuttal under the guise of impeachment. We agree.  The record clearly reveals that the defendant on direct examination did not testify as to whether or not he had ever had sexual relations with his older daughter.  However, on cross-examination, the prosecutor questioned him as to such relations which the defendant denied. Thereafter the prosecutor called the defendant's older daughter in rebuttal and she testified that the defendant had had prior sexual relations with her.

■ We first find that the prosecutor's cross-examination of the defendant in regard to sexual relations with his older daughter was improper in that it was outside the scope of direct examination. Where the defendant's direct testimony does not concern other criminal charges or arrests, the subject clearly constitutes a collateral issue which is not available to the prosecutor for the purpose of contradicting or impeaching the defendant.  See Payne v. State, 10 Okl.Cr. 314, 136 P. 201 (1913).

■■ This Court has consistently held that when an accused is on trial for one offense he is to be convicted, if at all, by evidence showing his guilt of that offense alone and evidence showing or tending to show his commission of other unrelated offenses is inadmissible.  North v. State, Okl.Cr., 518 P.2d 896 (1974).  An exception to this rule is set out in Harris v. State, 88 Okl.Cr. 422, 204 P.2d 305 (1949) wherein we stated that evidence of the commission of other offenses is admissible to show common scheme, plan or unlawful intent *only if such offenses are not too remote as to time* and there is a visible connection between them and offense charged. See also, Lancaster v. State, 88 Okl.Cr. 133, 200 P.2d 768 (1948) and English v. State, Okl.Cr., 480 P.2d 279 (1971) and 22A C.J.S.:

"[I]n a prosecution for incest with one daughter, testimony of another daughter, or another female, as to accused's sexual relations with her is not ordinarily admissible.  However, evidence that improper advances of a similar nature were made to another daughter of accused may be admissible, *if not too remote . . . .*"  22A C.J.S. Criminal Law § 691(34).

■ In the instant case it is our opinion that the prosecution improperly cross-examined the defendant as to alleged sexual acts with his older daughter and these questions should not have been allowed. We further find it was error to allow the prosecutor to call the older daughter in rebuttal to testify regarding alleged sexual assaults on her by the defendant in that the witness could not fix any definite date or time of the alleged occurrences resulting in the alleged acts being too remote in time to be admissible.  Therefore, this evidence would not have been admissible in the State's case in chief and to allow the State to get this evidence before the jury on rebuttal testimony would be to allow the State to accomplish indirectly what it could not do directly.

It is therefore our opinion that by reason of the highly prejudicial testimony given by the older daughter in rebuttal the defendant was denied a fair and impartial trial and this cause should be, and the same is hereby, reversed and remanded with instructions to grant defendant a new trial.

BLISS, P. J., and BRETT, J., concur.