**Carl Lee BROOKS, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–590.**

Court of Criminal Appeals of Oklahoma.

March 17, 1975.

Oyler & Smith, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David O'Brien, Legal Intern, for appellee.

### OPINION

PER CURIAM:

Appellant, Carl Lee Brooks, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–2566, for the offense of Bribery of a Public Officer in violation of 21 O.S.1971, § 381. His punishment was fixed at a term of six (6) months imprisonment and a fine of Fifteen Hundred ($1500.00) Dollars, and from said judgment and sentence a timely appeal has been perfected to this Court.

Inasmuch as this cause must be reversed and remanded for a new trial, we do not deem it necessary to recite the statement of facts.

Defendant's third proposition cites numerous contentions of error which he alleges kept defendant from having a fair trial. It is further alleged in defendant's fourth proposition of error that the finding of guilt by the jury was the result of prejudice engendered by improper closing argument of the prosecutor. With these contentions we agree.

Throughout the trial, the assistant district attorney made reference to, offered testimony about, and exhibited, a tape recorder and tapes which allegedly implicated the defendant in the act of bribery. During cross-examination of the defendant, and before a proper foundation had been laid for the admissibility of the said tapes, the prosecutor repeatedly asked if the defendant would have any objection to the jury hearing the tapes. (Tr. 270–272, 281–282). This was done over the numerous objections by defense counsel which were sustained by the trial court.

In the course of rebuttal, the prosecutor finally attempted to have the tapes admitted into evidence. Pursuant to an in camera hearing (Tr. 438), the trial court sustained defendant's objection to the introduction of the tapes into evidence. Upon the return of the jury at the conclusion of the in camera hearing, and in apparent disregard of the trial court's ruling, the prosecutor's first act was to pick up the tapes and offer them into evidence. This could only have resulted in prejudice to the defendant, as counsel was forced to object once more to the introduction of evidence that had already been determined to be inadmissible.

Furthermore, during his closing argument, the prosecutor made the following remarks concerning the tapes which were not in evidence:

"MR. MILLER: * * *

You've heard two or three witnesses testify about that tape recording and you've heard at least one of them say that he's heard that tape recording, heard it at the police station with police officers and it

was a conversation between Carl Brooks and Thomas Brewer about these—

MR. SIMON: If the Court please, there was no testimony as to what was on the tape recordings.

THE COURT: Sustained.

MR. MILLER: And if that's true, why do you think we've got this guy charged instead of Thomas Brewer. Now, Thomas Brewer was the real culprit and all these conversations were taped, anybody that listened to that tape recording would know exactly what went on and exactly who was talking about making the pay off and who wasn't talking about making the pay off. That's real simple, isn't it.

If that tape recording had anything on it that would be beneficial to Carl Brooks—you saw the tape recording over here during the previous part of the trial. If there was anything on there that would help that man right there, (indicating) he wouldn't have objected to it being in evidence, would he.

\* \* \*" (Tr. Vol. 2, 40–41)

Again, at Tr. Vol. 2, 83–85:

"MR. MILLER: I'm not going to spend any time rehashing it anymore. You decide in your mind why he talked about those tapes. You decide in your mind why he didn't want you to hear what was on it because that man right there was the one that was talking on it and if he was saying things on that tape that would have been beneficial to him, you'd have heard it. He's the one that objected and he's the one that didn't want you to hear it.

There's conflict obviously about what happened there in the office on the day that tape recording was made, and what better way to know who's telling the truth than to have the tape recording of what was said. That would settle it real fast about who's lieing and who isn't.

· · ·

\* \* \* \* \* \*·

What reason does Thomas Brewer have to lie about. Why would he have gone to the police if he's the real culprit. Why go to the police? And even if he had a reason to do that, when they tape recorded everything that was said between these two on different days and the police listen to that and Mr. Coats listen to that—

MR. SIMON: If the Court please, we object again to the statement concerning the tape recordings. They are not in evidence.

THE COURT: Sustained."

It is even more apparent that the improper conduct engaged in, by the assistant district attorney prejudiced the defendant when it is observed that, after retiring for deliberation, the jury sent a note to the trial court. In the transcript Vol. 2, pages 87–88, we find the following:

"THE COURT: This is in regard to a question which the jury presented to the Court after they began deliberations which was subsequently misplaced. The question was, to-wit: if the State and the defense counsel were to agree on the admission of the tapes would the Court allow the tapes. To which the Court answered that the jury was to consider the evidence and the exclusion of this as the Court has ruled and nothing further."

This argument and conduct was highly improper and should not have been allowed. While we are constantly stating that counsel for the State and defendant should be given great latitude and a wide freedom of expression in presenting their arguments, still we find that, in the instant case, it goes outside the record and is so prejudicial as to require reversal. See Ramos v. State, Okl.Cr., 445 P.2d 807 (1968).

The defendant further contends, in the instant propositions, that it was error to allow alleged improper rebuttal by the State's witness, Coates, which accused defendant and defendant's counsel of other crimes. In particular, he cites the following direct testimony of Mr. Coates:

"Q. Okay. What else happened, anything to make you change your contract?

A. Yes. It came to our attention through a piece of civil litigation, we felt we wanted to disassociate ourselves with Mr. Brooks, as a particular matter through our investigation revealed that he and his attorney was perpetrating a fraud upon the Court by representing an application as genuine and true when in fact our investigation revealed that this had been altered.

Q. All right. Who was—

MR. SIMON: If the Court please,— just a moment. If the Court please, I object to this answer and move that it be stricken. This man is certainly testifying to a conclusion and I know of my own knowledge it is not true.

MR. MILLER: He is testifying under oath that it is ture, if the Court please.

MR. SIMON: Still a conclusion on his part. He would have no way of knowing.

THE COURT: In regard to the complete statement or to any particular area?

MR. SIMON: In regard to the statement where he concludes that there was a fraud perpetrated.

THE COURT: It would be more definitive on this answer.

Q. (By Mr. Miller) All right. How do you know that—now, let me ask you this question. Who was the attorney you are talking about?

A. Mr. Simon, and Mr. O. B. Martin, excuse me." (Tr. Vol. I, 362–363).

In Thomas v. State, 34 Okl.Cr. 63, 244 P. 1116 (1926), we said:

"Such statement was highly prejudicial, creating in the minds of the jury the impression that counsel for defendant were not acting in good faith, and that he had argued to them the truth of a matter which he knew to be false. It tends also to prejudice them against defendant, and to add to their idea of his culpability."

This Court has held on numerous occasions that an accused on trial for one offense is to be convicted, if at all, by evidence showing his guilt of that offense alone and evidence showing, or tending to show, his commission of other unrelated offenses is inadmissible. See North v. State, Okl.Cr., 518 P.2d 896 (1974). It is also true that while convictions for criminal offenses may be shown to affect credibility, mere accusations of criminal activity or arrest and charges not amounting to convictions, are not available for introduction by the prosecution. See Brown v. State, Okl.Cr., 487 P.2d 963 (1971). Where the defendant's direct testimony does not concern other criminal charges or arrests, the subject clearly constitutes a collateral issue which is not available to the prosecution for the purpose of contradicting or impeaching the defendant. See Payne v. State, 10 Okl.Cr. 314, 136 P. 201 (1913).

A person accused of a crime is entitled to a fair and impartial trial conducted according to established principles of law, the most important of which is, the verdict of the jury should be founded only upon competent evidence. If the defendant cannot be fairly convicted, he should not be convicted at all, and to hold otherwise would provide ways and means for the conviction of the innocent. Accordingly:

"When a review of the entire record reveals numerous irregularities that tend to prejudice the rights of defendant, and where a cumulation of said irregularities denies defendant a fair trial, the case will be reversed, even though one of said errors standing alone would not be ample to justify reversal." Lovell v. State, Okl.Cr., 455 P.2d 735 (1969).

We do not deem it necessary for a proper determination of the issues involved in the case at bar, to pass upon the trial court's ruling as to the admissibility of the aforementioned tapes. Upon retrial, the trial court will have all of the necessary information to determine this question.

We further observe from the record that Assistant District Attorney Miller took the witness stand during the trial of the instant case. We would advise that if the State anticipates calling Mr. Miller as a

witness, upon retrial, the case should be assigned to another assistant district attorney.

For the reasons herein set forth, the judgment and sentence of the District Court, Oklahoma County, is Reversed and the cause is Remanded with instructions to again try the accused for the offense.