Cole Anthony CHANDLER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–227.

Court of Criminal Appeals of Oklahoma.

Nov. 28, 1977.

**286**

John T. Elliott, Public Defender, John M. Stuart, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern, for appellee.

## OPINION

BUSSEY, Presiding Judge:

Appellant, Cole Anthony Chandler, hereinafter referred to as defendant, was charged, tried and convicted upon trial by jury in the District Court, Oklahoma County, Case No. CRF–76–1296, for the offense of Child Beating, in violation of 21 O.S.1971, § 843. The jury returned a verdict of guilty and assessed punishment at a term of ten (10) years. From said judgment and sentence a timely appeal has been perfected to this Court.

We deem it unnecessary to recite the facts of this case inasmuch as the case must be reversed and remanded for a new trial.

As his first assignment of error, the defendant alleges that the trial court committed reversible error by allowing the State to elicit testimony of evidence of bad character and other crimes which irreparably prejudiced the defendant's right to a fair and impartial trial. We find that this contention has a great deal of merit. Some of the more flagrant examples of this type of evidence are as follows:

"MR. GEB: And then, did anything unusual occur after these things occurred, before the 26th day of March?

"MR. SAMARA: Object for the reason heretofore made.

"THE COURT: Overruled and exception.

"Q. (By Mr. Geb) Did anything unusual happen?

"A. [MS. POST, Mother of the victim] What do you mean?

"Q. Did anything happen to you and the baby?

"A. He beat me up.

"Q. How was that done?

"A. He tied me to a bed one time.

"MR. SAMARA: We object to this type of testimony, Judge. It's prejudicial and in violation of the constitutional and statutory rights of this defendant. He is inferring other offenses and we ask at this time for a mistrial.

"MR. GEB: It shows the intention of this defendant, a groundwork for the final thing of the 26th of March, your Honor.

"THE COURT: Overruled and exception. Let's refrain from anything further. Just go to this charge. . . ." [Tr. 24 & 25]

    \*    \*    \*    \*    \*    \*

[MS. POST] "Cameron was taking a bath and he was crying and stuff so Cole took him out of the bathtub and spanked him on the bottom and he left handprints.

[MR. GEB] "Q. Was Cole striking [sic] at that time?

"A. No. Well, I can't remember if he was drinking then but I know he was never alone with the baby when he had been drinking.

"Q. How do you know that?

"A. Because I didn't trust him.

"Q. Did you have stab marks above the bed?

"A. Yes.

"Q. Where did those come from?

"A. When Cole tied me to the bed he said he was going to slit my throat.

"MR. SAMARA: Judge, I object to that. It is prejudicial to this client and again I ask for a mistrial.

"THE COURT: Overruled and exception.

"(By Mr. Geb): What were the stab marks made by?

"MR. SAMARA: Same objection.

"THE COURT: Overruled and exception.

"(By Mr. Geb) What were they made by?

"A. By a knife I had in my kitchen." [Tr. 43–45]

And finally, at pages 95–97 of the transcript, we find the following:

"Q. (By Mr. Geb) Do you know anything about the relationship between your ex-husband which is your present husband now, isn't it?

[MS. POST] "A. Uhuh.

"Q. —And, the defendant?

"MR. SAMARA: Judge, that has nothing to do with this case at all. It's incompetent, ireelevant and immaterial and we ask the Court—

"THE COURT: Mr. Geb. I don't feel this is going to play any part in this case as far as the ex-husband.

"MR. GEB: May I approach the bench?

"(Thereupon, there was discussion between the Court and the attorneys, out of the hearing of the reporter and the jury.)

"THE COURT: Overruled and exception.

"MR. SAMARA (Out of the hearing of the Jury.) I think you are making a mistake, sir.

"THE COURT (Out of the hearing of the Jury.) I will be judge of the mistakes I make.

You may answer the question.

"A. No.

"MR. SAMARA: I am going to object to this for the reason it's totally incompetent and irrelevant; has nothing to do with this case and improper rebuttal. I never asked him this question. He brought it out on cross examination over my objection.

"THE COURT: Overruled and exception.

"Q. (By Mr. Geb) Did you have any conversation about the child looking like your ex-husband?

"A. Yes.

"Q. What was that conversation by Mr. Chandler?

"A. He was always saying, 'Why does he always have to look so much like Bennie,' and 'Poor child, he looks like Bennie,' and making little remarks about him, you know.

"Q. And, at any time were there any threats made toward the child and toward Bennie?

"MR. SAMARA: Same objection.

"THE COURT: Overruled and exception.

"A. Yes, like I was going to leave him or something, he would say, 'I know where you keep Cameron and where your husband is.'

"Before the preliminary, he called me and told me if he got put in jail over this, he was going to blow Bennie's head off.

"MR. SAMARA: Judge, we object to that and ask the Court to admonish the jury not to consider it; has nothing to do with this lawsuit whatsoever and he has harpooned this defendant all through the trial.

"Now, your Honor, we are going to object to all these emotional reactions.

* * * "

■ This Court has held on many occasions that with certain exceptions, evidence of other crimes is inadmissible. Further, if that evidence is admitted over the objections of the defendant and is prejudicial to that defendant, then the same is cause for reversal. We have carefully studied the record in this case in light of our ruling in *Dooley v. State*, Okl.Cr., 484 P.2d 1324 (1971) and *Hall v. State*, Okl.Cr., 528 P.2d 1117 (1974). In these cases, this Court has consistently held that evidence of other crimes may be admissible if they go to show (1) motive, (2) intent, (3) absence of accident, (4) identity of the accused, (5) common scheme or plan. However, in the cases cited, supra, we clearly stated that such evidence must have a direct causal connection with the case at bar.

■ In the instant case the admission of the defendant's actions against his wife and threats against third parties into evidence, is error since the same are not connected with the crime charged. There is a complete lack of evidence as to the date, time and place of these occurrences. The jury had no way of knowing if they occurred months, weeks, days or hours prior to the present offense.

For his second assignment of error the defendant urges that the trial court erred in the admission of certain hearsay testimony which was highly prejudicial.

The testimony is reflected in the transcript at pages 53 and 54 of the trial proceedings, as follows:

[OFFICER COOK] "A. When I spoke to her alone, I asked the young lady what happened—how did the child get the bruises and—

"MR. SAMARA: Let me have a continuing objection.

"THE COURT: All right.

"A. (Continuing) I asked how the child got the bruises and so forth and she became hysterical. I calmed her down and she made the statement to me that she had never beat the child.

"She didn't want to sound like she was putting it off on her boyfriend, Cole, but if the child had been beaten he was the one that had done it—that she hadn't even spanked him.

"MR. SAMARA: Judge, I object to that because it is not responsive to the question and I ask the Judge to admonish the Jury not to consider it for any purpose.

"THE COURT: That statement was made; this man was making the investigation and therefore I will allow it in and the objection is overruled and exception.

    *    *    *    *    *    *

"Q. (By Mr. Geb) Did you ask him anything that he couldn't remember?

"A. Yes, I asked him if he every drank—

"MR. SAMARA: Judge, I object to that. It has nothing to do with this lawsuit and it is prejudicial and ask the Court to admonish the Jury not to consider it for any purpose, and ask for a mistrial again.

"THE COURT: Overruled and exception.

"Q. (By Mr. Geb) Go ahead, answer it.

"A. I had a conversation with the mother of the child and she told me [he] drank quite heavily. I believe the exact phrase she used was, 'Every time he got a penny, he would go buy liquor.'

"I asked him at that point if he ever spanked the child while he had been drinking and he told me he could not remember. . . ."

■ The testimony elicited from Officer Cook contained more than one instance of hearsay; particularly that testimony concerning his conversation with the child's mother. Although it appears in the above passage that the defendant was present when she made the reported statements incriminating him, the record reveals that in reality he was not present.

The Attorney General, in his brief, makes a lengthy argument that the above cited testimony was admissible under the "res gestae" exception to the rule. However, the record clearly indicates that this conversation took place not during, or immediately after, the offense, but instead, during the investigation conducted by the officer who testified. Coupled with the fact that the person who made the statement was initially charged with the offense. It makes the hearsay testimony so questionable as to have little, if no, probative value.

For his third assignment of error, the defendant urges that the conduct of the prosecutor was such as to prejudice the rights of the defendant. More specifically, the defendant points to certain statements made during closing arguments. The exact argument objected to by the defendant is found at pages 108 through 110 of the transcript, as follows:

"Then, we go to Anita and have her testimony. She was certainly an indiscreet [sic] person, moving in with this fellow, but, you know, I am not interested in Anita. I am interested only in this child. The State of Oklahoma's only interest is in this child because what we do to this defendant today for child beating is going to alert other child beaters that the people of Oklahoma County are not sympathetic.

"MR. SAMARA: Judge, I am going to object to that and request the Judge to advise the Jury not to consider it for any purpose not within the grounds of evidence, and ask for a mistrial.

"THE COURT: What are you asking for, Mr. Samara? What are you objecting to?

"MR. SAMARA: The line of some other persons.

"THE COURT: Overruled and exception.

"MR. GEB (Continuing) So, what you do today is not going to be limited to the four walls of this courthouse or this courtroom. It's going beyond.

"MR. SAMARA: May I have a continuing objection to this?

"THE COURT: All right.

"MR. GEB (Continuing) It's going to go beyond to the northwest, it's going to Bethany, it's going to Yukon, and to Midwest City. It's going to every place and every village in Oklahoma County about what happened in this child beating case.

"Remember what Anita said, that this defendant tied her to the bed and stabbed these places above the bed with a butcher knife? Remember when she said that the defendant said he would blow the child's father's head off? Those are undenied. The defendant did not deny either one of those items.

"MR. SAMARA: Yes, he did, Judge, and we object to it.

"THE COURT: All right, Mr. Samara. Overruled and objection [sic]. This is final argument.

"MR. SAMARA: And, I would ask the Court to advise the Jury not to consider it.

"THE COURT: They know what they heard from the witness stand. Overruled and exception.

And again, at pages 123 and 124:

"MR. GEB (Continuing) Ladies and Gentlemen, consider that. I think tonight when you go home after you do what I hope you will, return a verdict of guilty, that you will know you made a great contribution to the justice of Oklahoma County.

"It doesn't make any difference to the defense lawyer. He goes from one courtroom to another—

"MR. SAMARA: Judge, now I am going to object to that and ask the Court to admonish the Jury not to consider it for any purpose and ask for a mistrial.

"THE COURT: Overruled and exception.

"MR. GEB (Continuing) This is just another paid client and if you go to another courtroom, you will hear the same objections but this is the only day this baby has a chance in Court. This is the only day this baby can ask you as jurors to answer the challenge of child beating. This is the only day this baby can say, 'Ladies and Gentlemen of the Jury, return a verdict of guilty for the protection of other children and other babies.'

"Think of the violent nature of this defendant; think of the things that were admitted on the stand. He admitted himself that he tied her up on the bed. It has got to be one of the two.

"The doctors were concerned; the doctors felt it was child abuse; the doctors felt there were bruises. A child is not going to burn himself all over his body. Think of the violence when he says he was going to blow her ex-husband's head off, and put all that violence and hatred and pour it into the six packs of beer on top of that and the hatred because he hated the looks of a child because it looked like its father.

\* \* \* "

■ Comments concerning personal attacks against the defense counsel will not be condoned by this Court; however, the remedy for such comments may be other than modification or reversal of a case unless those comments have the effect of prejudicing the rights of the accused. In this case we think such as occurred. The comments made by the prosecutor deny the defendant his constitutional right to be represented by counsel. See, generally, *Fry v. State*, 91 Okl.Cr. 326, 218 P.2d 643 (1950).

■ The comments concerning the violent nature, the drinking habits and the dislike for the child's father, could have no other effect than to inflame the prejudice of the jury and were totally uncalled for. See *Hill v. State*, 76 Okl.Cr. 371, 137 P.2d 261 (1943).

■ For his final assignment of error, the defendant urges that the cumulative effect of the above cited errors denied him a fair and impartial trial. We have carefully examined the entire record and find that

for the above and foregoing reasons such effect did most probably occur. In *Lovell v. State*, Okl.Cr., 455 P.2d 735, 736 (1969), we held in the fourth paragraph of the Syllabus:

"When a review of the entire record reveals numerous irregularities that tend to prejudice the rights of defendant, and where a cumulation of said irregularities denies defendant a fair trial, the case will be reversed, even though one of said errors standing alone would not be ample to justify reversal."

See, also, *Brooks v. State*, Okl.Cr., 533 P.2d 639 (1975).

We therefore hold that this case should be, and the same is hereby, *REVERSED AND REMANDED FOR A NEW TRIAL*, not inconsistent with this opinion.

CORNISH and BRETT, JJ., concur.