**Rodger Alan REAVES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–368.**

Court of Criminal Appeals of Oklahoma.

Aug. 5, 1982.

E. Terrill Corley, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant was charged with Burglary in the Second Degree in Tulsa County District Court. The appellant waived a jury trial. The trial court found the appellant guilty and sentenced him to five (5) years imprisonment.

The sole issue is whether the pretrial identification procedures were impermissively suggestive as to taint the in-court identification in violation of the appellant's due process rights.

Reaves asserts that the photographic identification procedure was impermissively suggestive for several reasons. He contends: (1) that a comment by the police officer after the victim had only tentatively identified his picture was unnecessarily suggestive, (2) that the repeated showing of the pictures was prejudicial, and (3) that the other persons depicted in the photographic display did not even remotely possess the same physical characteristics as the appellant.

On December 22, 1979, Alvin Rhodes returned to his apartment and noticed his door was ajar. As he attempted to push the door open someone from inside his apartment grabbed him. A struggle ensued and Rhodes was hit in the head with a pry bar. Rhodes managed to gain possession of the pry bar and swung it at his assailant, but missed. At this time, a second assailant emerged from the apartment. This second assailant was later identified as Rodger Reaves. He pointed a gun at Rhodes and

ordered him to drop the pry bar. Rodger Reaves allegedly handed the pistol to his accomplice who ordered Rhodes inside the apartment. Once inside, Rhodes grabbed the pistol, but was unable to overpower his assailants. During the scuffle that ensued, Rhodes was severely beaten up by the two assailants.

At gunpoint, Rhodes, who was at this time in a semi-conscious state, was ordered into the bathroom where he was robbed of his wallet. The assailants then fled and Rhodes managed to contact the police. He was later taken to the hospital where he stayed for approximately ten days recovering from severe body and facial injuries.

On December 26, 1979, while the victim was in the hospital, Detective Campbell showed Rhodes a photographic display consisting of nine photographs. Rhodes carefully looked through the photographs several times. He tentatively picked out two photographs of his alleged assailants, Rodger Reaves and his brother, Stephen Reaves. He informed the detective that he was not positive they were his assailants. Detective Campbell determined this initial identification by Rhodes of the suspects was insufficient to make an arrest.

After the victim had tentatively identified his assailants, Detective Campbell informed him that the two guys were brothers. Campbell also informed Rhodes that "one of the dudes was bad." Rhodes then asked Campbell whether they were capable of murdering someone. Campbell responded that they were.

When Rhodes was released from the hospital, Detective Campbell went to his apartment and showed him the two pictures he had tentatively identified in the hospital. This time Rhodes positively identified Rodger Reaves and Steve Reaves. Rhodes stated that he was sure they were the two assailants. Rhodes was shown the original stack of nine photographs a third time while in the presence of the assistant district attorney. Placed in this stack of photographs was an additional picture of Rodger Reaves. This second picture was a more recent photograph of Reaves, depicting him as having gained weight. Once again, immediately prior to the preliminary hearing, Rhodes was shown the two photographs of Rodger Reaves.

■ In determining whether a photographic showup conforms with constitutional principles the standard "is that of fairness as required by the Due Process Clause of the Fourteenth Amendment." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Pretrial photographic identifications will be set aside only if the photographic identification procedure is so impermissively suggestive as to give rise to a substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This same standard is also applied when determining the reliability of out-of-court identifications alleged to have been tainted by earlier suggestive procedures. *Manson v. Brathwaite, supra.*

■ Under the totality of the circumstances, in this case, we hold that the pretrial identifications procedures were impermissively suggestive. First, we find that the nine picture photographic display was suggestive. It is difficult to find anyone in the photographs with the same general physical characteristics as the accused. The accused is four to six inches shorter than any of the other persons in the photo display. Only one person other than the accused has a mustache. Seven of the photographs depict persons with medium length and long hair. The accused is shown as having short hair and is the only person with his arm in a sling. Also, he looks markedly older than most of the other persons shown in the photo display. Lastly, only one person is shown as having long sideburns similar to the accused.

We further find unnecessarily suggestive the fact that Detective Campbell told the victim that the persons he had tentatively identified were "bad." Campbell stated that the initial identification was too weak to even arrest the suspects. Additionally, we conclude that the repeated showing of the photographs of the accused was very

suggestive, especially the single photograph displays. Therefore, we find that the pretrial photographic identification procedure was impermissibly suggestive.

 We now turn to the second inquiry. Did the victim's identification of the appellant possess sufficient independent indicia of reliability, despite the suggestive aspects of pretrial identification procedures? The Supreme Court in *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, stated:

> We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

The record does not establish sufficient aspects of reliability. The victim stated that he returned home between 9:45 p. m. and 10:00 p. m. The light outside the appellant's apartment was burned out. Additionally, it was dark inside the victims' apartment. It was very difficult for the victim to get a clear view of the accused.

It appears that most of the victim's attention was directed toward the first assailant who hit him with the pry bar and wrestled him for the gun. The victim did not observe his second assailant for any great length of time. Additionally, shortly after the incident the victim informed the police that he did not get a very good look at the accused. Further, Rhodes lost his eye glasses prior to becoming aware that a second assailant was inside his apartment. Rhodes was unable to give the police any description of the second assailant. Officer Turner testified that the victim stated to him that he was not sure if he could identify the second assailant.

Based upon these factors and the unnecessarily suggestive pretrial identification procedure, we find that the in-court identification of this appellant was violative of due process principles. The judgment and sentence is REVERSED and REMANDED.

BRETT, P. J., and BUSSEY, J., concur.