Steven Richard REAVES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–335.

Court of Criminal Appeals of Oklahoma.

Aug. 6, 1982.

Ron Wallace, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Chief, Appellate Crim. Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant was convicted of Burglary in the Second Degree in Tulsa County Dis-

trict Court. After waiving a trial by jury, the trial judge found Reaves guilty and sentenced him to ten (10) years' imprisonment.

This Court will address four issues raised on appeal: (1) the pre-trial identification procedures; (2) the scope of cross-examination during an in-camera hearing; (3) the trial court's alleged refusal to provide the appellant with materials used by a State's witness to refresh his memory; and, (4) the State's alleged failure to provide the appellant with exculpatory evidence.

I

The appellant contends that the pre-trial identification procedures were unduly suggestive so as to render the in-court identification unreliable and violative of due process. We addressed the identification procedures utilized in this case in the companion case, Reaves v. State, 649 P.2d 777 (1981). That case dealt with the identification procedures in regard to Rodger Reaves, the appellant's brother and alleged accomplice in the burglary.

On December 22, 1979, Alvin Rhodes returned home and found two men burglarizing his apartment. Rhodes attempted to thwart the burglary. However, the two assailants severely injured Rhodes during the scuffle which ensued and at gunpoint robbed him of his wallet. He later called the police and was taken to the hospital for treatment.

While Rhodes was recuperating in the hospital, Detective Campbell asked him if he could identify his assailant from among nine photographs. Rhodes examined all the photographs several times before tentatively identifying the appellant, Steven Reaves and his brother, Rodger Reaves, as his assailants. He stated, that he thought they were the two men, however, he was not sure. Detective Campbell informed Rhodes that the two men he picked out were brothers. Campbell also stated that "one of the dudes was bad." Rhodes then asked Campbell whether they were capable of murdering someone. Campbell responded that they were.

After Rhodes was released from the hospital, Detective Campbell went to his apartment and showed him the two pictures of the persons he had tentatively identified in the hospital. At this viewing, Rhodes positively identified Rodger Reaves and Steven Reaves. Rhodes stated that he was sure they were the two assailants. Rhodes was shown the original stack of nine photographs a third time when he was interviewed by the district attorney.

■ Identification through the use of photographs is a valid police procedure. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court acknowledge the use of photographs and asserted

... that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The appellant argues that the pre-trial identification procedures were impermissively suggestive for two reasons. First, he argues Officer Campbell's comments made after the hospital identification were unduly suggestive. Second, that the repeated showing of the photographs to the victim was conducive to irreparable mistaken identification. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

■ With regard to the appellant, Steven Reaves, we find that the photographic display was not violative of due process. The individuals pictured in the photo display possessed the same general characteristics of the appellant. The trial judge properly conducted an in-camera hearing as to the propriety of the identification procedures. The trial judge concluded that the identification procedures were not so impermissively suggestive as to give rise to a very substantial likelihood of misidentification. On review, we cannot hold that his ruling was

erroneous with regard to Steven Reaves. Under the totality of the circumstances, we find that the identification procedure did not create a substantial risk of misidentification.

The police comment at the hospital was made after the victim had already identified his assailants. The comment was not intended to pressure the victim into identifying anyone. Further we find that the procedure allowing the victim to view the photographs on three occasions did not create a substantial likelihood of misidentification. Although we do not condone the third viewing of the photographs by the victim, we find that it was not so unduly suggestive as to violate due process.

■ We also hold that the victim's in-court identification possessed independent aspects of reliability. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Even if the pretrial identification procedures are impermissively suggestive, it does not require exclusion of an in-court identification provided the in-court identification is reliable. *Manson v. Brathwaite*, 432 U.S. 98 at 114, 97 S.Ct. 2243 at 2253, 53 L.Ed.2d 140. In determining whether the in-court identification is reliable, this Court will consider

... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself. *Manson v. Brathwaite*, supra.

In this case, the victim had ample opportunity to view Steven Reaves, even though it was fairly dark at his apartment. Rhodes struggled with his assailant at very close range. Outside the apartment, Rhodes wrestled Richard Reaves for possession of a pry bar. Inside the apartment Rhodes attempted to disarm Richard Reaves of the pistol he had aimed at his head. Further, he had an excellent opportunity to view Steven Reaves in his lighted bathroom when he robbed him of his wallet.

Rhodes apparently directed most of his attention toward the appellant. The struggle for the pry bar and the pistol ensured that the victim's attention was directed toward the appellant. His attention on the assailant was clearly more than a casual observer. The victim was fighting with his assailant for his life.

The victim also gave the police a fairly good description of the assailant later identified as the appellant, Steven Reaves. He accurately described the appellant as a white male, blond hair, five foot-seven to five foot-eight, and light complexion. He also described the coat worn by the assailant during the burglary.

Although the victim could not positively identify the appellant at the hospital, he did tentatively identify both assailants. Later, he positively identified the appellant. Lastly, time lapse between the crime and the identification was reasonably short. He identified the appellant about five days after the incident. A sooner identification was impossible because Rhodes' eyes were swollen shut during the first few days he was in the hospital. The second and positive identification of the appellant was merely eleven or twelve days after the burglary.

Considering the totality of the circumstances, we find that the photographic identification was not impermissively suggestive. In addition, we find that the in-court identification possessed sufficient aspects of reliability.

■ It is further argued that the trial judge erroneously placed the burden of proof on the appellant to establish that the pre-trial identification procedures were impermissively suggestive. In *Battles v. State*, 513 P.2d 1314, 1317 (Okl.Cr.1973), this Court enunciated the general rule that in regard to motions to suppress the burden is on the accused "to offer evidence in support of an alleged impropriety in proceeding." The defendant has the initial burden of showing that the identification procedure was impermissibly suggestive; once this ini-

tial burden is satisfied, the burden of proof shifts to the State to establish by clear and convincing evidence that the in-court identification has independent aspects of reliability. See *Cooper v. State*, 599 P.2d 419, 422 (Okl.Cr.1979). Therefore, we find that the trial judge did not err in its allocation of the burden of proof.

## II

 The appellant contends that the trial court improperly limited the scope of cross-examination during the in-camera hearing. He alleges the trial court refused to permit him to fully cross-examine the victim about prior inconsistent statements he made concerning the identity of the assailants. In *Locke v. State*, 554 P.2d 847, 850 (Okl.Cr.1976), cert. denied, 429 U.S. 985, 97 S.Ct. 503, 50 L.Ed.2d 596, this Court reiterated the general rule that the scope of cross-examination lies in the sound discretion of the trial court. This Court will not interfere with the trial court's decision to limit cross-examination unless there is an obvious and prejudicial abuse of discretion. In this case, the appellant was allowed to extensively cross-examine the victim about prior inconsistencies in his testimony. Accordingly, we find no abuse of discretion by the trial court.

## III

The appellant argues that the trial court erroneously refused to provide him with a police report used by Officer Campbell to refresh his memory. However, the record fails to substantiate the appellant's factual allegations. Not only did the trial court grant the appellant's request to review the police report but the appellant was also allowed to introduce the report as a defense exhibit. Therefore, we find this proposition to be totally without merit in law or fact.

## IV

 The appellant lastly asserts that the trial court failed to provide him with all exculpatory evidence. The appellant requested that the trial judge examine the State's files and provide him with all exculpatory evidence required to be revealed under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The appellant and the State stipulated that they would accept the trial judge's judgment on what was exculpatory evidence. The trial court did review the State's files and found no exculpatory evidence that would fall under *Brady*. We find that the appellant is bound by this ruling in light of the stipulation. Further, the record reveals that the evidence the appellant complains was improperly withheld was actually given to the appellant prior to trial. Thus, we necessarily find this contention to be frivolous.

The judgment and sentence is AFFIRMED.

BUSSEY, J., concurs.

BRETT, P. J., concurs in result.