J.D. LEIGH and David Eugene
Evans, Appellants,

v.

The STATE of Oklahoma, Appellee.

Nos. F–83–259, F–83–260.

Court of Criminal Appeals of Oklahoma.

April 12, 1985.

E. Alvin Schay, Appellate Public Defender, Norman, for appellants.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

J.D. Leigh, F–83–259 and David Eugene Evans, F–83–260, were convicted of the armed robbery of an Okmulgee, Oklahoma, pharmacy on the afternoon of March 19, 1982. Their separate appeals have been consolidated, and we affirm.

Appellants contend that the testimony of the owner and his wife identifying the defendants as the robbers should have been excluded due to the witnesses' exposure to impermissibly suggestive pretrial photographic lineups. This contention is without merit.

The testimony was received without objection at trial. Moreover, the argument is devoid of merit on the basis of the preliminary hearing transcripts, which formed the basis for the denial of a pretrial motion to suppress.

■ The pretrial photographic lineup at which the owner identified Leigh was not impermissibly suggestive. Three days after the crime, an officer showed the owner six photographs arrayed in a folder. The six subjects were of approximate build and hair style, and all had facial hair. Leigh was not clad conspicuously.

Although participants in pretrial photo displays should possess the same general physical characteristics as the accused, see *Reaves v. State,* 649 P.2d 777 (Okl.Cr.1982); and *Reaves v. State,* 649 P.2d 780 (Okl.Cr. 1982), substantial compliance with physical similarity guidelines will suffice. Cf. *Ken-*

*nedy v. State,* 640 P.2d 971, 979 (Okl.Cr. 1982). Even though one of the subjects had facial swelling, and another was apparently shorter and younger than Leigh, the photo lineup was not impermissibly suggestive.

However, the photo array viewed by the owner and his wife several days later, at which Evans was identified as one of the robbers, was impermissibly suggestive. The array consisted of five of the previous photos and one of Evans. Evans differed in physical appearance from the other subjects in at least one particular—he had no facial hair.

This showup fell short of the requirements for such procedures. However, the witnesses' testimony was admissible, since it was shown to be independently reliable. See *Reaves v. State,* 649 P.2d 780, 783 (Okl.Cr.1982). The witnesses had a good opportunity to view Evans at the time of the crime. Just before the robbers entered the store, the owner was standing behind the counter, and his wife was sitting on the floor behind the same counter doing paperwork. The lighting was good. The taller of the two robbers, identified as Leigh, remained at the front door on lookout. The shorter, identified as Evans, came around the counter and trained a gun on the owner, demanding stated drugs.

The owner hurried about, complying with the demands. When the gunman noticed the wife on the floor, he donned a nylon mask. Evans stood, unmasked, as close as a foot away from the owner, and the businessman was able to view him for perhaps fifteen to twenty seconds during the estimated five minutes the robbers remained in the store. The owner's wife viewed Evans unmasked for an estimated thirty to forty-five seconds at a distance of from six to fifteen feet.

The witnesses were shown to have devoted a high degree of attention to Evans, since he was the gunman and the man giving the orders. The witnesses' previous descriptions of Evans were relatively accurate. A drawing bore a fairly good likeness to a mug shot of Evans; the owner's wife stated that she had informed the artist of certain shortcomings in the drawing which would have made for an even closer match.

The witnesses, who viewed the photo array separately, exhibited certainty in their identifications of Evans' picture, and the photo display occurred only six days after the crime. Even considering the corrupting influence of the suggestive photo array, we find that the testimony identifying Evans as the gunman was properly received.

Appellants contend that the judge erred in refusing to submit a cautionary instruction to the jury concerning the hazards of eyewitness testimony. See *Pisano v. State,* 636 P.2d 358, 361 (Okl.Cr.1981). Assuming arguendo that such an instruction is required under certain circumstances, we need not address this contention at length. The jury was in fact instructed, inter alia, that they were to assess the credibility of the witnesses in light of the witnesses' ability to remember and relate past occurrences and the witnesses' means of observation and opportunity of knowing the matter testified to. Jury Instruction No. 10. This was sufficient to cover the point complained of. *Roberts v. State,* 620 P.2d 425, 426 (Okl.Cr.1980), n. 3. This contention is without merit.

Appellants complain of the fact that the prosecution was permitted to recall a defense witness on rebuttal for the purpose of eliciting the witness' prior felony conviction, thus impeaching his testimony. They assert that the state should have elicited the prior conviction on cross-examination, and that it constituted improper rebuttal.

This contention is not well taken. Title 22 O.S.1981, § 831 specifies the order of trial, and states that, during rebuttal, the parties may

offer rebutting testimony only, unless the court for good reason, in furtherance of justice, or to correct an evident oversight, permit them to offer evidence upon their original case.

See also *McGaffey v. State*, 31 Okl.Cr. 306, 238 P. 865 (1925) ("It is within the discretion of the trial court to reopen a case for the purpose of further cross-examination, and unless a clear abuse of discretion is shown, there is no error", Syl. 2).

No abuse of discretion appearing, this contention is without merit.

Appellants next complain of the denial of their motion for mistrial based upon an alleged prosecutorial attack on the character of one of the defense attorneys. The prosecutor asked during a recess but in the presence of the jury, "what are you going to sell us today?" Defense counsel took the remark as a reflection on his sincerity, while the prosecutor insisted that it was uttered in the context of defense counsel's presumed complaint that the courtroom was too cold.

■■■ Personal attacks on defense counsel will not be condoned by this Court. See *Babek v. State*, 587 P.2d 1375 (Okl.Cr. 1978); and *Chandler v. State*, 572 P.2d 285 (Okl.Cr.1977). The remarks were ill-chosen and ill-advised. However, whether to grant a motion for mistrial is a matter for the discretion of the trial court. *Camp v. State*, 664 P.2d 1052 (Okl.Cr.1983). We find no abuse of discretion in this instance.

Appellants contend that the trial judge erred in denying a defense request that armed guards be excluded from the courtroom. It appears that one such guard sat "adjacent" to the defense table.

■■■ This assertion is not well taken. It is within the sound discretion of the trial court to require the presence of a peace officer in the courtroom for the protection of all concerned. See *Roberts v. State*, 571 P.2d 129 (Okl.Cr.1977), cert denied, 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316; and *Hart v. State*, 535 P.2d 302 (Okl.Cr.1975). In this case, two men were on trial in the same courtroom for armed robbery, after former conviction of two felonies; each faced a minimum of twenty years in prison, if convicted. We find no abuse of discretion.

Appellants' further assertion that they were denied equal protection of the law is also without merit. The purpose of appearance bond is to guarantee that the accused will be available at such times as the court may direct. *Application of Owens*, 349 P.2d 766 (Okl.Cr.1960). The amount of bail fixed in these cases prior to trial is not an issue before us, and we assume that it was set in a proper amount to insure the appellants' attendance at all court proceedings. Accordingly, the presence of the guard in the courtroom may be said to serve the state's undoubted interest in continuing appellants' lawful custody, thus assuring that they will remain available for court proceedings and to answer the eventual judgment of the court.

*Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) is distinguishable, for in that case, the specific treatment of pretrial detainees said to unlawfully discriminate, i.e., requiring the accused to stand trial in jail clothing, was found to not further any essential state policy. 425 U.S. at 505, 96 S.Ct. at 1693.

Finally, appellants seek leave of this Court to file, either in this Court or in the District Court, motions for new trial on the ground of newly discovered evidence. However, since more than one year has passed since the entry of judgment and sentence, such a motion may not be filed in either court. See 22 O.S.1981, § 953; and 22 O.S.1981, Ch. 18, App., Rule 2.1(A)(2). Appellant must press their claims under the provisions of the Post Conviction Procedure Act, 22 O.S.1981, §§ 1080, et seq. See 22 O.S.1981, Ch. 18, App., Rule 2.1(A)(3).

The judgment and sentence is AFFIRMED.

PARKS, P.J., concurs in results.

BRETT, J., specially concurring.

PARKS, Judge, concurring in the result:

I concur with the result reached by the Court in this case, but I wish to comment on a few points.

First, while I agree that there are "sufficient independent indicia of reliability" to

make the in-court identifications of defendants admissible, *Reaves v. State*, 649 P.2d 777 (Okl.Cr.1982), the photo-lineup of Evans itself was so impermissibly suggestive that it should have been excluded from trial. However, this error was not reversible as the testimony about the pre-trial lineup was merely cumulative of the in-court identification.

Second, our cases show that a cautionary instruction is required under certain circumstances, e.g. *Pisano v. State*, 636 P.2d 358 (Okl.Cr.1981), and *Hall v. State*, 565 P.2d 57 (Okl.Cr.1977). Under the test expounded in those cases, the facts of this case do not indicate the need for such an instruction. But, I do not agree that a failure to give a cautionary instruction when one is required can be cured by giving a general "credibility of witnesses" instruction.

Finally, I agree that the trial court's allowing the prosecutor to recall a defense witness for the purpose of impeachment during rebuttal time could be considered a re-opening of cross-examination, and therefore, not an abuse of discretion. However, 12 O.S.1981, § 2609 states:

"A. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted *if elicited from him or established by public record during cross-examination* ... [emphasis added]

This statute clearly requires such rebuttal to be during cross-examination. If cross-examination is to be re-opened during rebuttal time, as we are allowing in this case, that fact should be made clear in the record, and the examination should be strictly limited to that expressed purpose.

BRETT, Judge: specially concurring.

Considering the facts of this case, I feel compelled to concur in this decision. The facts herein are clearly distinguishable in this case from this Court's recent decision in *McDoulett v. State*, 685 P.2d 978 (Okl. Cr.1984).