1999 OK CR 10

**Stephen VAN WHITE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–89–566.**

Court of Criminal Appeals of Oklahoma.

March 10, 1999.

---

Thomas C. Giulioli, District Attorney, Gregory R. Stidham, Patrick Moore, Assistant District Attorneys, Okmulgee County Courthouse, Okmulgee, Oklahoma, for the State at trial.

Lawrence W. Parish, Joel Butterworth, Henryetta, Oklahoma, for the Defendant at trial.

Jamie D. Pybas, Julie L. Gardner, Appellate Defense Counsel, Norman, Oklahoma, Attorneys for Appellant on appeal.

Susan Brimer Loving, Attorney General of Oklahoma, A. Diane Blalock, Assistant Attorney General, Oklahoma City, Oklahoma, Attorneys for Appellee on appeal.

*O P I N I O N*

JOHNSON, Judge:

¶ 1 On December 22, 1982, Stephen Van White,[1] Appellant, was charged in Okmulgee County District Court Case No. CRF–82–375 with Murder (malice aforethought) in the First Degree (Count I), Assault and Battery with Intent to Kill (Count II), Robbery with a Dangerous Weapon (Count III) and Attempted Rape (Count IV). Jury Trial began on May 21, 1984. The jury found Mr. White guilty on all counts and sentenced him to death on Count I after finding three aggravating circumstances. Appellant received twenty years imprisonment on Count II and life imprisonment on both Counts III and IV. Judgments and Sentences were imposed in accordance with the jury's verdicts on June 15, 1984.

¶ 2 On direct appeal in Case No. F–84–557, Counts II, III and IV were affirmed and the murder conviction was reversed and remanded for a new trial. *Van White v. State,* 1988 OK CR 47, 752 P.2d 814. On April 13, 1989, the State filed an Amended Bill of Particulars alleging four aggravating circumstances. Mr. White was tried by jury on May 15–19, 1989, and convicted of First–Degree Murder. At the conclusion of the punishment stage, the jury found each of the four alleged aggravating circumstances and sentenced Appellant to death. The trial court entered

---

1. It is noted that Appellant has also been referred to as Stephen Vann White.

Judgment and Sentence in accordance with the jury's verdicts on June 2, 1989. Appellant has perfected his appeal to this Court.

## FACTS

¶ 3 On December 22, 1982, Ms. Lorene Jackson was shopping in downtown Okmulgee. She entered the Waggin Tail Thrift Shop as she was accustomed to doing when she was in the area. When she entered, it appeared that no one was in the store. She called out a greeting and when no one answered she began to get a chill. She considered exploring the store, but sensing something was wrong she left the store to get help. As she was exiting the store, she saw what appeared to be blood on the floor. Ms. Jackson then called to James Draper who was across the street washing his cab. Mr. Draper came in response to her call.

¶ 4 Mr. Draper went in the store to investigate. Mr. Draper saw blood and what appeared to be an upper plate of false teeth lying on the floor. This so alarmed Mr. Draper that he went back outside and called the police.

¶ 5 Okmulgee police arrived and conducted a complete inspection of the house. The body of Geraldine Dennis was found lying in front of the closet in the second bedroom. She was covered with blood, still alive, and was transported to a hospital in Tulsa. The officers next discovered the partially nude body of Shirley Mann, an employee of the store. She was lying in a pool of blood in a darkened bathroom and was not alive.

¶ 6 In the late afternoon of the same day, Appellant checked into the El Rancho Motel in Okmulgee. He asked the motel owner if he could change twenty-seven dollars worth of coins. After hearing about the murder of Shirley Mann on television, the motel owner, Mr. Milligan, called the police department to inquire if a large amount of change had been taken in the robbery/murder.

¶ 7 The following day, Okmulgee Police Detective Perry Harkrider and OSBI[2] Agent Proctor were patrolling the city. The officers had information that a Native American male had been seen in the area of the homicide. These officers spotted Appellant walking down the street and stopped to talk with him. Upon seeing the officers get out of their car, Appellant raised his hands in the air, turned around and leaned spread-eagled against a wall. The officers turned Appellant around and one of them noticed that his tennis shoes were stained with what appeared to be blood. They asked and Appellant agreed to go to the police station with them for questioning.

¶ 8 At the station, Appellant was given his *Miranda*[3] rights and questioned about the Mann homicide. Appellant initially told the officers that he had been in the immediate area, but denied going into the Waggin Tail. He consented to the taking of certain physical evidence which took place at the Okmulgee Hospital. Appellant was returned to the police department where he was placed under arrest. When OSBI Agent Proctor told Appellant he was under arrest for First Degree Murder, he dropped his head and said, "I did it." His subsequent confession was recorded, transcribed and entered into evidence.

¶ 9 Geraldine Dennis testified that she went into the Waggin Tail Thrift Shop and she was followed in by a man. After they entered the store, the man slammed the door and pulled a knife out of his pocket. The man, later identified as Appellant, began stabbing Mrs. Dennis in the neck, chin, inside the mouth and above the eyes. Mrs. Dennis' dentures came out of her mouth and her eyeglasses came off. Mrs. Mann, whom Mrs. Dennis had seen when she entered the store, went to a phone across the room. Appellant stopped attacking Mrs. Dennis and went after Mrs. Mann. Appellant disabled Mrs. Mann so that she could not use the phone and went back to attacking Mrs. Dennis. Mrs. Dennis fell to the floor and then saw Appellant go to Mrs. Mann. He put a knife in her back and forced Mrs. Mann to the back of the building. Mrs. Dennis heard Mrs. Mann say, "You shouldn't do this to me. I have cancer." Mrs. Dennis crawled behind

---

2. Oklahoma State Bureau of Investigation.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

a desk, and hid in a curtained off closet. Appellant later returned to her and pulled her out of the closet. Mrs. Dennis lost consciousness and did not awaken until she was in the intensive care unit at the hospital in Tulsa. With respect to Mrs. Mann, it was later determined that Appellant had also attempted to rape her after he had stabbed her to death.

¶ 10 Other pertinent facts will be discussed in the context of the assignments of error to which they relate.

## PRETRIAL ISSUES

¶ 11 On January 26, 1995, Appellant filed a motion requesting leave to present two additional assignments of error. Appellant's request was granted by Order of this Court on January 30, 1995. We find no merit in either of these additional propositions of error. Furthermore, we will only address Appellant's assertion that based upon an intervening change in the law, the Information was not legally sufficient to confer subject matter jurisdiction on the trial court.

■ ¶ 12 A specific reference is made at the top of the Information to Title 21 O.S., § 701.7 which is the First Degree Murder statute and the jury was only instructed on malice aforethought murder. Defense counsel did not object to the "malice aforethought" instructions. Relying upon *Pickens v. State*, 1994 OK CR 74, 885 P.2d 678, Appellant now contends the Information in the present case was clearly insufficient.

■ ¶ 13 We find the Information in the instant case clearly set forth sufficient facts to allege the critical elements of first degree murder. This Court in *Pickens* applied *Miller v. State*, 1992 OK CR 8, 827 P.2d 875, which required a criminal Information to set forth facts to allege each element of the crime charged. This Court rejected *Miller* in *Parker v. State*, 1996 OK CR 19, ¶ 21, 917 P.2d 980, 986. We concluded that any failure to allege facts constituting an offense raises due process questions, but does not automatically affect the trial court's jurisdiction. *Id.* at 985. Consequently, our review now focuses on whether the Information gave Appellant notice of the charges against him and

apprised him of what he must defend against at trial. *Id.* at 986. This Court stated that this determination will be made on a case-by-case basis. *Id.*

¶ 14 In the instant case, Appellant never objected to the Information at trial. Nonetheless, Appellant now claims that the charging document was deficient because it used the term "premeditated design" instead of "malice aforethought." The subject trial was Appellant's second trial for Murder in the First Degree. On his first direct appeal, Counts II, III and IV were affirmed and the murder conviction was reversed, on other grounds, and remanded for a new trial. *Van White v. State*, 1988 OK CR 47, 752 P.2d 814. Appellant was again tried by jury for First Degree Murder on May 15–19, 1989.

¶ 15 Upon looking to the "four corners" of the Information together with all of the materials that were made available to Appellant at preliminary hearing and through discovery, we find Appellant received sufficient notice of the charge against him in the present case. In addition, we find that the specific intent element of the crime of Murder in the First Degree pursuant to 21 O.S.1991, § 701.7(A), was sufficiently alleged by the use of the term "premeditated design."

¶ 16 The voluminous record from the two trials is replete with notice of the nature of the crime charged. It is clear that Appellant understood he was charged with malice aforethought murder. Furthermore, it is clear that all the parties involved in this case believed Appellant was charged with malice aforethought murder. Accordingly, we find that the irregularity in Appellant's Information does not require reversal and we find that no due process violation occurred. Therefore, this proposition of error must fail.

## COMPETENCY TO STAND TRIAL

■ ¶ 17 On May 15, 1996, after oral argument in this case, Appellant, by and through his appellate counsel, filed a "Notice of Change In The Law and Motion For Leave to Present An Additional Assignment of Error." Specifically, Appellant requested this Court to take judicial notice of *Cooper v. Oklahoma*, 517 U.S. 348, 116 S.Ct. 1373,

1376–77, 134 L.Ed.2d 498 (1996), holding that Oklahoma's statutory rule requiring a defendant to prove his incompetence to stand trial in a criminal case by "clear and convincing evidence" violates a defendant's right to due process of law under the Fourteenth Amendment. The Supreme Court held the burden of proof could not be higher than a "preponderance of the evidence." *Id.* at 1377.

¶ 18 Accordingly, on August 22, 1996, this Court issued an "Order Directing The Trial Court To Determine Feasibility Of Conducting Post–Examination Competency Hearing; And, If Feasible, To Conduct Hearing Using Constitutionally Acceptable Standard." On April 7, 1997, the Honorable John Maley, District Judge, District Court of Okmulgee County, determined that such a hearing was feasible, and on November 19–21, 1997, Judge Maley conducted a retrospective post-examination competency trial by jury. The jury found Appellant had not proven by a preponderance of the evidence that he was incompetent during the time of his trial on May 15–19, 1989. However, Appellant raises eight supplemental propositions of error stemming from the retrospective post-examination competency trial.

¶ 19 In his first proposition of error, he claims the retrospective competency proceeding violated due process because 1) the trial court abused its discretion and violated Appellant's due process rights by concluding it was feasible to retrospectively determine his competence to stand trial in 1989 and 2) retrospective competency proceedings violate both state and federal laws and constitutions. Appellant first argues the trial court erred in finding the State met its burden of proof at the feasibility hearing where the State's only evidence consisted of the State's assertion 1) that "all those records that were relied upon from Eastern State Hospital are still available and can be used by all of the doctors or the medical people," 2) that Dr. Goodman would be available to testify and 3) "that several of the witnesses who testified or were available to testify from Eastern State Hospital would also be available to testify." We find these circumstances to be similar to those in *Marshall v. State,* 1998 OK CR 30, ¶ 17, 963 P.2d 1, 7 and *Boltz v. State,* 1991

OK CR 1, ¶ 12, 806 P.2d 1117, 1121–1122, *cert. denied,* 502 U.S. 846, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991). As such, the trial court properly determined that a retrospective competency determination was feasible.

¶ 20 Appellant also argues he has a due process liberty interest in having his competency determined before he stands trial. On the contrary, Appellant's interest under the competency statutes is in being found competent to participate in criminal proceedings. This is defined as "every stage of a criminal prosecution after arrest and before judgment, including, but not limited to, interrogation, lineup, preliminary hearing, motion dockets, discovery, pretrial hearings and trial." 22 O.S.1991, § 1175.1(3). The statutes require only a determination that Appellant was competent to participate in criminal proceedings before his conviction, and does not prohibit this Court from remanding a case for a lower court to make such determination. *Bryan v. State,* 1997 OK CR 15, ¶ 12, 935 P.2d 338, 350. The retrospective competency proceedings did not violate Appellant's due process liberty interests. This supplemental proposition is denied.

¶ 21 In his second supplemental claim, Appellant contends the evidence was insufficient to establish he was competent to stand trial in 1989. Appellant bases this contention on his witnesses' testimony that he was mentally impaired and did not assist in his own defense at his 1989 trial. However, the pertinent issues are: whether Appellant had the **ability** to consult with his attorneys and whether Appellant had a rational and factual understanding of the proceedings against him. *Dusky v. United States,* 362 U.S. 402, 403, 80 S.Ct. 788–789, 4 L.Ed.2d 824 (1960). Overwhelming evidence was presented that Appellant understood the nature and consequences of the proceedings and had the ability to assist his counsel in his defense. Any rational trier of fact could have found from the evidence presented that Appellant had not proven his incompetency by a preponderance of the evidence. This supplemental claim is denied.

¶ 22 In his third supplemental claim, Appellant asserts the trial court erred when

it allowed into evidence its Order of Restored Competency containing its opinions and findings on the issue of Appellant's competency to stand trial in 1989. The State introduced this document in surrebuttal to rebut the testimony of defense witness Dr. Lanier that Appellant was not competent to stand trial in 1989. The State reasoned that Dr. Lanier's testimony would mislead the jury into believing Appellant was forced to trial without ever being found competent. Appellant further argues that since the Order of Restored Competency was introduced under the unconstitutional burden of proof [clear and convincing], it was null and void and of no legal effect and thus, an irrelevant factor in this competency proceeding. Appellant also argues the Order 1) constituted inadmissible hearsay, 2) placed Judge Maley [who authored the Order in the 1989 non-jury proceedings] in the prohibited position of becoming a witness in a proceeding over which he was now presiding, and 3) unfairly injected Judge Maley's opinion into the proceedings, thereby invading the province of the jury and violating Appellant's constitutional rights.

¶ 23 A review of the record reveals that when Judge Maley allowed the Order to be admitted, he specifically granted defense counsel the opportunity to "argue to the jury that the—the burden has changed. And that—and now the question is, at this point in time, whether or not he is competent by a mere preponderance of the evidence. And that's for their determination to make." While defense counsel objected to the admittance of this evidence, he failed to make this argument to the jury. Under these circumstances, we find that Appellant has waived this issue for review on appeal. Additionally, assuming *arguendo* there was error, we find it to be harmless given the overwhelming evidence of competence and the jury instruction on the proper burden of proof. Appellant's third supplemental claim is denied.

¶ 24 Fourth, Appellant asks this Court to reverse and remand this case for a new competency trial because the State exercised three peremptory challenges by striking the only three minority members of the panel: one African American and two Native Americans [Appellant is Native American]. Responding to defense counsel's objection, the prosecutor offered no race-neutral reason for excluding the black juror, reasoning: "The black juror doesn't even come into play, Judge, because if Mr. White [Appellant] is an Indian, the fact that I have excused a black man doesn't come into play." Regarding the two Native Americans, the prosecutor explained they "were excused because of—despite the fact they indicated that they could serve, they both were diabetic." Additionally, the prosecutor argued, "I don't think the standard is the same as a civil case, which this is as opposed to a criminal case. This really isn't quasi-criminal. This is purely a civil commitment case." The prosecutor noted that although most people would not know by looking at him, he was an "Indian" and that there were several people in the box whom he was sure are "Indian" too. The trial court, finding the jury properly impaneled and sworn, overruled defense counsel's motion.

■ ¶ 25 We do not find that Appellant has met his burden in making a *prima facie* case of discrimination against Native Americans. We find the prosecutor's conclusion that racial identity between Appellant and the black prospective juror is not a precondition for a *Batson* [4] challenge clearly violated the principles set forth in *Powers v. Ohio*, 499 U.S. 400, 416–417, 111 S.Ct. 1364, 1373–1374, 113 L.Ed.2d 411 (1991). In *Green v. State*, 1993 OK CR 30, ¶ 8, 862 P.2d 1271, 1272, we reversed and remanded for a new trial after finding the trial court failed to require the prosecutor to articulate a race-neutral reason for exercising its peremptory challenge to remove the only black prospective juror. Here, the trial judge did require the prosecutor to articulate a race-neutral reason. However, based on the prosecutor's erroneous understanding of the law, said reason was insufficient to establish a race-neutral explanation. Accordingly, on October 19, 1998, this case was remanded for an evidentiary hearing to determine the prosecutor's race-neutral reason for exercising its peremptory challenge to remove the perspective juror. On November 5, 1998, the

---

4. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Honorable John Maley, District Judge, held a hearing. After hearing the evidence and arguments, the trial court found that the prosecutor had noted in his trial notes that he excused the prospective juror because that juror was inattentive and appeared to be sleepy.[5] The trial court found this reason to be race-neutral.

¶ 26 Appellant submitted two supplemental claims of error arising from this evidentiary hearing. First, he reasserts his objection to this Court's remand, arguing this case should have been reversed and remanded for a new competency trial based on the *Batson/Powers* violation. Appellant argues given the potential for abuse, the integrity of the process is compromised when the State is given another opportunity to respond, notwithstanding its refusal to respond on the first occasion. Additionally, Appellant argues it is nearly impossible for the judge to rule intelligently, after the fact, on challenges based on observation of purported juror conduct during *voir dire*. The same applies to an appellate attorney, who was not present at the time, to intelligently challenge the strike long after the relevant events have occurred. These concerns and relevant authority were considered by this Court in its decision to remand for the evidentiary hearing. This supplemental evidentiary hearing claim is denied.

¶ 27 In his second supplemental evidentiary hearing claim, Appellant asserts the prosecutor's stated race-neutral reasons for the strike were pretextual. Appellant reasons that were this juror actually sleeping as claimed, the prosecutor would have called it to the court's attention and requested to remove the juror for cause. Additionally, Appellant reasons it is highly suspect that the prosecutor would risk reversal by holding fast to his own incorrect interpretation of *Batson* rather than provide a race-neutral reason at the time one was originally called for.

¶ 28 On review, this Court is called upon to analyze the neutrality of the prosecu-

tor's explanation as a legal issue, and the review is only for clear error by the trial court. *Pennington v. State*, 1995 OK CR 79, ¶ 29, 913 P.2d 1356, 1365. We find no clear error. This supplemental evidentiary hearing claim of error is denied.

¶ 29 In his fifth supplemental proposition of error, Appellant claims the trial court committed fundamental error in allowing the final day of his competency proceeding to be conducted in his absence. The record reveals that the Sheriff of Okmulgee County related to the trial court in the presence of counsel for both sides that the difficulty in housing Appellant necessitated Appellant being transported each night back to McAlester. The trial court, in conference with counsel, all agreed that since the final day of the proceedings would consist only of transcript testimony and closing argument in which Appellant would have no participation, Appellant would not need to be present that day. The trial court informed the jury that because the testimony to be presented was prior testimony which would be read into the record, followed immediately by closing arguments in which Appellant would not have any participation, Appellant's presence was not necessary that day.

¶ 30 Appellant argues he was neither personally consulted about waiving his right to be present nor did he waive his right to be present during the final day of trial, including the reading of the verdict. Additionally, Appellant argues he did not forfeit his right to be present by engaging in disruptive or disrespectful behavior during the proceedings. A defendant charged with a felony has both a constitutional and statutory right to be personally present at all stages of trial. *Clark v. State*, 1986 OK CR 65, ¶ 9, 718 P.2d 375, 377; 22 O.S.1991, § 583. Further, 22 O.S.1991, § 912 mandates a defendant's presence when a verdict is returned. Additionally, 22 O.S.1991, § 1175.4(C) mandates a defendant's right to be present at his competency hearing unless it is made to appear to the court that his presence makes it impossible to conduct the hearing in a rea-

5. According to his handwritten notes submitted as State's Exhibit 1, the prosecutor noted, "Sleeping/not paying attention."

sonable manner. On the other hand, a defendant may voluntarily waive that right. *Darks v. State,* 1998 OK CR 15, ¶ 34, 954 P.2d 152, 162; *Brown v. State,* 1994 OK CR 12, ¶ 48, 871 P.2d 56, 69; *Gregg v. State,* 1992 OK CR 82, ¶ 24, 844 P.2d 867, 876–877; *Parker v. State,* 1976 OK CR 293, ¶ 11, 556 P.2d 1298, 1302. Further, a defendant can forfeit his right to be present at proceedings against him if, after he has been warned by the court that he will be removed if he continues to engage in disruptive or disrespectful behavior. *Gregg,* 1992 OK CR 82 at ¶ 24, 844 P.2d at 877; *Peters v. State,* 1973 OK CR 443, ¶ 13, 516 P.2d 1372, 1375. In *Darks,* 1998 OK CR at ¶ 38, 954 P.2d at 163, this Court held that although such a waiver may be inferred from the record, the preferred practice would be for the trial court, on the record, to advise the defendant of his rights and, if the defendant desires to waive his rights, obtain an intelligent and knowing waiver.

¶ 31 Here, the record is silent as to any attorney-client consultation. Absent a consultation between Appellant and his counsel [apparent on the record], a knowing and voluntary waiver should not be presumed. The record is also silent as to any evidence to support a valid forfeiture of Appellant's right to be present. Accordingly, the trial court erred in holding the final day of Appellant's competency proceedings, including the rendering of the verdict, in Appellant's absence.

¶ 32 We must now decide whether this constitutional error was harmless. A finding of plain error is merely a threshold requirement for appellate review, for error may nevertheless be found harmless. *Simpson v. State,* 1994 OK CR 40, ¶ 28, 876 P.2d 690, 698. In order for constitutional error to be deemed harmless, the Court must find beyond a reasonable doubt, that it did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The standard for constitutional violations is well-known: reversal is in order unless the State can show the error was harmless beyond a reasonable doubt. *Arizona v. Fulminante,* 499 U.S. 279, 295, 111 S.Ct. 1246, 1258, 113 L.Ed.2d 302 (1991); *Bartell v. State,* 1994 OK CR 59,

¶ 11, 881 P.2d 92, 95–97; *Simpson,* 1994 OK CR 40 at ¶ 34, 876 P.2d at 701, *citing Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The burden thus is on the State—the beneficiary of the error—to prove beyond a reasonable doubt that the error is harmless.

¶ 33 The State, relying on *Snyder v. Massachusetts,* 291 U.S. 97, 107–108, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), responds that Appellant's rights were not interfered with, nor was justice thwarted by Appellant's absence during the introduction of prior sworn testimony and the reading of the verdict. The State reasons that because Appellant was present at the time of the prior testimony, the opportunity for cross-examination, consultation with counsel, observation of witnesses, and the panoply of reasons which explain the right of Appellant to be present during his trial were originally met.

¶ 34 The transcripts were read in the courtroom in the presence of defense counsel. Nothing in the record indicates there was any irregularity as to the manner and method in which the transcripts were read which would permit us to conclude any prejudice occurred. Accordingly, we hold that the error was harmless beyond a reasonable doubt. We deny this supplemental claim of error.

¶ 35 In his sixth supplemental proposition, Appellant claims the trial court erred in allowing the State to elicit testimony from Dr. Goodman regarding Appellant's competency to stand trial. Appellant states this was in violation of the trial court's pre-trial discovery order, as well as the trial court's order *in limine* to limit Dr. Goodman's testimony to that given in prior proceedings. The State did not give notice of intent to elicit testimony from Dr. Goodman other than testimony previously given in earlier proceedings regarding Appellant's sanity. Before Dr. Goodman took the stand, defense counsel made a record objecting to any testimony of Dr. Goodman other than his testimony from Appellant's 1989 trial and statements contained in Dr. Goodman's report of May 15, 1989. Despite defense counsel's objection, the trial court ruled that Dr. Goodman would be allowed to testify as to his

opinions based on all the records and his observations up to May 1989, the time of trial. While defense counsel lodged a continuing objection, he failed to request additional time to otherwise prepare for Dr. Goodman's testimony regarding Appellant's competency. *See Allen v. District Court,* 1990 OK CR 83, ¶ 20, 803 P.2d 1164, 1169. The record does not show that Dr. Goodman's testimony was any different than his prior testimony or brought new matters into the trial. Thus, any error is waived and will not be considered. This proposition is denied.

¶ 36 In his seventh supplemental proposition, Appellant claims he was denied a fair competency trial because of prosecutorial misconduct. Specifically, Appellant claims the prosecutor argued beyond the scope of the competency proceedings, attempted to inflame the jury against him, commented on Appellant's failure to testify, and improperly inflated Dr. Goodman's testimony. We have examined the comments in question and, based on the entire proceedings, we find neither reversal nor modification is warranted. *See Hogan v. State,* 1994 OK CR 41, ¶ 29, 877 P.2d 1157, 1163. This claim is denied.

■ ¶ 37 In his last supplemental proposition, Appellant contends the jury verdict finding him competent to stand trial is erroneous because the jury was never required to determine if he had a factual and rational understanding of the proceedings against him. We have previously considered and rejected this argument in *Tate v. State,* 1995 OK CR 24, ¶ 17, 896 P.2d 1182, 1188, and *Lambert v. State,* 1994 OK CR 79, ¶ 11, 888 P.2d 494, 497–498 and decline to reconsider our holding. This supplemental claim is denied. Having denied all of Appellant's supplemental propositions, we find that Appellant's due process rights were not denied by these competency proceedings.

## ISSUES RELATING TO
## JURY SELECTION

■ . ¶ 38 In Appellant's ninth proposition of error, he claims that errors occurring dur-

ing *voir dire* violated his rights under the Eighth and Fourteenth Amendments and Article 2, §§ 7, 9, 19 and 20 of the Oklahoma Constitution. He contends in his first sub-proposition that the trial court improperly questioned prospective jurors about their ability to impose the death penalty. He argues that the holdings of *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) and *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) were violated when the trial court asked prospective jurors if they could consider the death penalty without doing violence to their conscience and by excusing two venire persons based on their answers to the trial court's questions. We disagree.

■ ¶ 39 Appellant misinterprets *Wainwright.* The *Wainwright* Court clarifies *Witherspoon* and reaffirms the standard set forth in *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), for determining juror exclusion on the basis of their objection to capital punishment. The standard is whether the juror's views on applying the death sentence would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright,* 469 U.S. at 424, 105 S.Ct. at 852. The Court went on to clarify that this standard "does not require that a juror's bias be proved with 'unmistakable clarity'." *Id.* at 424–25, 105 S.Ct. 844. This Court has considered the very same question and determined that while the question used by the trial judge in *voir dire* was not ideal, "we cannot conclude that it was inconsistent with the 'substantial impairment' test articulated in *Witt." Battenfield v. State,* 1991 OK CR 82, ¶ 11, 816 P.2d 555, 559, *cert. denied,* 503 U.S. 943, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992).[6]

¶ 40 A review of the trial court's *voir dire* reveals that the subject jurors in this case were properly excused for cause, as they could not follow the law and instructions.

6. However, in *Battenfield,* unlike the instant case, defense counsel was given an opportunity to rehabilitate those jurors who responded affir-

matively to the question at issue. 816 P.2d at 559.

Therefore, there was no error and this sub-proposition is found to be without merit.

 ¶ 41 In his second sub-proposition, Appellant claims that the holding of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was violated when the State removed three Native American venire people by peremptory challenges. Appellant is a Native American of the Creek and Utah tribes. Upon review we find that *Batson* was not violated.

¶ 42 The State provided racially neutral explanations for the removal of each of the three Native American jurors. Two were women who were unemployed and unmarried.[7] The State posited that employed and married jurors were preferred. The third Native American juror was removed because charges were pending by the State against his brother and he was to be a witness in that case. We find no error. This sub-proposition has no merit.

 ¶ 43 Finally, in his third sub-proposition, Appellant contends that the trial court erred in refusing to exclude three venire persons for cause. The trial court did not abuse its discretion in refusing to excuse the three jurors. Moreover, many of Appellant's requests of removal for cause were granted. This Court has determined the following:

> It is well settled in Oklahoma that a defendant has no vested right to have a particular juror out of a panel. His right is that of objection rather than that of selection. And if the trial court is of the opinion that any juror is not fair or impartial or is for any reason unqualified, he may excuse the juror either upon challenge of one of the parties or upon his own motion without challenge. Whether or not a juror should be excused rests in the sound discretion of the trial court, and unless such discretion is abused there is no error.

*Lewis v. State*, 1978 OK CR 123, ¶ 4, 586 P.2d 81, 82.[8] The trial court did not abuse its discretion. This sub-proposition is without merit.

FIRST STAGE EVIDENCE

 ¶ 44 In his third proposition of error, Appellant claims that his confession was not properly admitted into evidence because he did not knowingly and intelligently waive his rights during police questioning. Appellant did not challenge the admissibility of his confession at trial. No motion to suppress was filed, nor was the admission of the confession met with a contemporaneous objection. Furthermore, Appellant made use of the typed version of his statements to police in his case in chief. You cannot have your cake and eat it too, as the old saying goes. By failing to object and by affirmatively using the confession in evidence, Appellant has waived all but plain error. We find no error.

 ¶ 45 When the issue of voluntariness of a confession is raised, the totality of the circumstances surrounding the confession must be considered. *Castro v. State*, 1987 OK CR 182, ¶ 26, 745 P.2d 394, 403, *cert. denied*, 485 U.S. 971, 108 S.Ct. 1248, 99 L.Ed.2d 446 (1988) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)). The ultimate test of the voluntariness of a confession is whether it is the product of an essentially free and unconstrained choice by its maker. *Id.* A review of the totality of the surrounding circumstances includes the characteristics of the accused and the details of the interrogation. *Bustamonte*, 412 U.S. at 226, 93 S.Ct. at 2047.

¶ 46 In the present case, the record supports a finding that the confession was not extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of improper influence. In his argument, Appellant contends that it was his mental condition which rendered this confession involuntary, no matter how appropriately the police officers may have behaved. The United States Supreme Court has determined that the

---

7. It should be noted that the State used its sixth peremptory to excuse another juror who was also unemployed and unmarried. She was not Native American.

8. Further, it is important to note that Appellant did not even use all of his peremptory challenges, thus there was no prejudicial effect from the trial court's refusal to remove these jurors for cause.

mental condition of a defendant is a factor. However, they hold that "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness'." *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). The Court goes on to say that it is error to presume that the deficient mental condition of the defendant in a case is sufficient to render his or her confession involuntary. *Id.*

¶ 47 Furthermore, our Court has held that mental or intellectual deficiencies do not render a confession invalid. *Farris v. State*, 1983 OK CR 141, ¶ 11, 670 P.2d 995, 998; *Tarver v. State*, 1982 OK CR 156, ¶ 8, 651 P.2d 1332, 1334. Only if the accused's degree of mental impairment is so great as to deprive him of the capacity to understand the meaning and effect of his confession should the confession be considered inadmissible. *Lee v. State*, 1985 OK CR 62, ¶ 13, 700 P.2d 1017, 1020. The pertinent question is, despite Appellant's alleged mental retardation and alleged inhalant abuse history, did he understand the consequences of his confessions to the OSBI agents? [9]

¶ 48 Immediately after he was placed under arrest for first degree murder, Appellant dropped his head and said, "I did it." Moreover, the arrest and subsequent confession took place only one day after the murder. The OSBI agents testified that during their conversations with Appellant he was coherent and able to respond to questions without any trouble.

¶ 49 The record below supports a finding that Appellant's confession was freely and voluntarily given. He understood the effect of waiving his right to remain silent. Besides, Appellant never attempted to have his confession suppressed and he did not object to its use at trial. In addition, he made affirmative use of it himself during his case in chief. Finally, we find that use of the confession did not contribute to Appellant's conviction or sentence of death beyond a reasonable doubt. There was overwhelming forensic evidence and eyewitness testimony

from the victim who survived the murderous attack. For the foregoing reasons, we find this proposition of error is without merit.

¶ 50 In his fourth proposition of error, Appellant argues that the State improperly used rebuttal testimony in countering his evidence regarding insanity. The evidence complained of consisted of medical reports and prior testimony from Drs. Portnoff and Garcia. This evidence contradicted the testimony of Appellant's psychological expert, Dr. Donica.

¶ 51 In his first sub-proposition, Appellant asserts that it was error when the State read Dr. Portnoff's and Dr. Garcia's testimony from the previously transcribed preliminary hearing transcripts without having this testimony transcribed again. It is not every omission of transcription which necessitates a reversal, even in a capital case. *Van White*, 1988 OK CR 47 at ¶ 17, 752 P.2d at 819. Both doctors were unavailable to testify in person. Dr. Garcia had passed away and Dr. Portnoff was unable to be located. The preliminary hearing was clearly a judicial tribunal equipped to provide an accurate record. *Britt v. State*, 1986 OK CR 99, ¶ 11, 721 P.2d 812, 816. Furthermore, the prosecutor assured the trial court and defense counsel that there would be no mention made of competency, or, as far as possible, mention of prior defense counsel. It cannot be presumed that the prosecutor violated his promise and the trial court's directive. The record is devoid of any objections made during the time in which this testimony was read for the jury. Therefore, the record was reviewed for plain error only. Finding none, this sub-proposition is without merit.

¶ 52 The contentions in Appellant's next three sub-propositions will be addressed together as the arguments overlap. The previously sworn testimony of Drs. Portnoff and Garcia, and the corresponding hospital report, were all introduced by the State in an effort to combat Appellant's evidence. The defense evidence, primarily from Dr. Donica, asserted that Appellant was insane, that he could not form the specific intent to commit

---

**9.** Appellant was read his *Miranda* rights at three different points during questioning.

murder and that he was incapable of faking mental illness. This Court has previously held that the State may properly introduce rebuttal testimony regarding a defendant's mental condition at the time of a homicide. *Maghe v. State,* 1980 OK CR 100, ¶ 8, 620 P.2d 433, 435.

¶ 53 Here, this same evidence was used by defense counsel in his direct examination of Dr. Donica,, thereby opening the door for rebuttal. *Cf. Driskell v. State,* 1983 OK CR 22, ¶ 100, 659 P.2d 343, 360. For example, Dr. Donica testified, during the defense case in chief, that the defendant was not mentally capable of faking his condition. The State attacked this analysis by introducing the prior sworn testimony of Portnoff and Garcia. Where the defendant originally used the evidence regarding competency, any alleged error was invited. *Van White,* 1988 OK CR 47 at ¶ 10, 752 P.2d at 819.

¶ 54 Appellant goes on to claim that the use of this same evidence, the testimony of Portnoff and Garcia, violated his privilege against self-incrimination and 22 O.S.1981, § 1175.4. The United States Supreme Court has held that "the State's use of information obtained during a psychiatric examination for the limited purpose of rebutting a defendant's insanity defense does not implicate the Fifth Amendment." *Buchanan v. Kentucky,* 483 U.S. 402, 423–424, 107 S.Ct. 2906, 2918, 97 L.Ed.2d 336 (1987). In the present case, both doctors testified as to their examination of Appellant for the purposes of competency diagnosis. The examination did involve them asking Appellant questions and his answering them. However, none of the questions called for an incriminating response and none was given. Nor did the testimony relate any incriminating statements. Therefore, the privilege was not violated.

¶ 55 Section 1175.4 states that no statement made in conjunction with a competency examination may be used against a defendant, except that if a defendant is found to be competent, the statements can be used for impeachment. Here, Appellant's statements to Drs. Portnoff and Garcia were used only to impeach the statements given to Dr. Donica. Dr. Donica's interpretation of Appellant's statements could be impeached by the sworn testimony of Drs. Portnoff and Garcia. In light of the discussion above, these sub-propositions are likewise without merit.

¶ 56 In his fifth proposition of error, Appellant contends that allowing Dr. Goodman to testify in rebuttal violated his attorney-client privilege under 12 O.S.1991, § 2502, as well as several of his constitutional rights. Appellant asserts that his rights were violated when the State was allowed to call Dr. Goodman as their rebuttal witness, when Dr. Goodman was originally appointed by the Court to aid the defense.[10] The defense chose not to have Dr. Goodman testify on its behalf.

¶ 57 Prosecutorial discovery of information generated by non-testifying defense psychiatric experts is an unsettled question. In *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court held that a criminal defendant had a due process right to expert psychiatric assistance. The Supreme Court did not directly address the role of court appointed psychiatric experts but implied that they should act for the defense in a partisan capacity. Later, the Supreme Court refused to grant certiorari in *Granviel v. Lynaugh,* 881 F.2d 185 (5th Cir.1989), *cert. denied, Granviel v. Texas,* 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990). In *Granviel,* the Fifth Circuit upheld the prosecution's access to any reports generated by the court-appointed defense psychiatrist. Furthermore, the Court determined that raising an insanity defense constitutes waiver of the defendant's protection against self-incrimination with regard to psychiatric testimony. *Id.* at 190. Finally, the Fifth Circuit also held that Texas' method of appointing a neutral expert satisfied the Fourteenth Amendment. *Id.* at 192. Justices Marshall and Brennan dissented from the denial of certiorari and argued that the Fifth Circuit's decision was inconsistent with *Ake.*

---

**10.** Defense counsel objected to Dr. Goodman reporting directly to the trial court rather than acting as an advocate for the defense.

¶ 58 More recently, the United States Supreme Court clarified the distinction between a defendant's Fifth and Sixth Amendment rights with respect to psychiatric testimony in *Powell v. Texas*, 492 U.S. 680, 684–865, 109 S.Ct. 3146, 3148–50, 106 L.Ed.2d 551 (1989). In *Powell*, the United States Supreme Court recognized the inherent inequity in permitting a defendant to raise an insanity defense while objecting to disclosure of the psychiatric evaluations. The Supreme Court noted in *Buchanan*, that no violation occurred because the psychiatrist did not reveal any admissions of the defendant concerning his crime. *See Buchanan v. Kentucky*, 483 U.S. 402, 422–423, 107 S.Ct. 2906, 2917–2918, 97 L.Ed.2d 336 (1987). With respect to any violation of attorney-client privilege in the instant case, the psychiatrist's testimony was introduced to rebut Appellant's insanity defense.

¶ 59 Lower courts are divided on the issue of whether the prosecution should have access to defense psychiatric experts. Some courts deny access on the grounds of the attorney-client privilege, others on the work product doctrine. In *United States v. Alvarez*, 519 F.2d 1036, 1046–47 (3d Cir.1975), the Third Circuit reversed a conviction in which the government called the court-appointed defense psychiatrist. The Third Circuit held that the attorney-client privilege protected the expert's reports. However, in *United States ex. rel. Edney v. Smith*, 425 F.Supp. 1038, 1054–1055 (E.D.N.Y.1976), *aff'd. without opinion*, 556 F.2d 556 (2d Cir.1977), *cert. denied*, 431 U.S. 958, 97 S.Ct. 2683, 53 L.Ed.2d 276 (1977), the attorney-client privilege was found to be qualified. In *Smith*, the prosecution was allowed to call such an expert on the ground that the defense had waived the attorney-client privilege by offering expert testimony on the insanity issue.

¶ 60 When deciding the issue of whether the attorney-client privilege protects client communications to psychiatric experts, courts use a balancing test. The courts balance counsel's need for assistance in representation and the court's need for potentially probative evidence.[11] Courts refusing to protect

the information do so on the need for all relevant evidence on the issue of sanity and the completeness of psychiatric evidence. Other courts protect the information on the notion that otherwise it would have a chilling effect on the defendant to speak candidly to their psychiatrist.

¶ 61 This balancing test was applied in *Pouncy v. Florida*, 353 So.2d 640, 641 (Fla. App. 3 Dist.1977). In *Pouncy*, the court held that the doctrine of attorney-client privilege bars the State from deposing and calling as witnesses psychiatrists hired by an accused or his counsel for the sole purpose of aiding the accused and his counsel in the preparation of an insanity defense, except where the trier of fact would be so effectively deprived of valuable witnesses as to undermine the public interest in the administration of justice. The court partly relied on the holding in *City and County of San Francisco v. Superior Court*, 37 Cal.2d 227, 231 P.2d 26 (1951), which held that when a physician is used as an agent of the attorney and examines the client for the sole purpose of aiding the attorney and not for the purpose of treating the client, any information obtained by the physician is privileged. The *Pouncy* court reasoned that the defense attorney must be free to make an informed judgment with respect to the client's best defense without the inhibition of creating a potential government witness. *Pouncy*, 353 So.2d at 642. Also, the Colorado Supreme Court held the psychiatrist retained by defense counsel to assist in the preparation of defense to be an agent of the attorney and thus could assert the attorney-client privilege. *See Miller v. District Court in and for the City and County of Denver*, 737 P.2d 834, 839 (Colo.1987) (*en banc*).

¶ 62 In light of the foregoing, we hold that the attorney-client privilege is applicable where defense counsel is provided a court-appointed expert to aid in his client's defense. This privilege is maintained whether or not the defense calls that expert at trial. Therefore, we find that the prosecution's use of Dr. Goodman's testimony at trial was error. However, under the subject

11. Elizabeth F. Maringer, Witness for the Prosecution: Prosecutorial Discovery of Information Generated by Non-testifying Defense Psychiatric Experts, 669–671.

facts, the error was harmless. Here, even the defense's own psychiatrist could not say with any certainty that Appellant was legally insane at the time of the murder, or at anytime. Dr. Goodman's testimony was used only in rebuttal and the nature of the testimony was corroborative, in part, of the defense expert testimony, as well as cumulative.

¶ 63 Additionally, contrary to Appellant's assertions, the defense was provided a copy of Dr. Goodman's report on the same day as the State. This was one day after the trial had begun. It was at this time that the State then endorsed Dr. Goodman as its own witness. Consequently, the defense was on notice that this witness would be called and was provided a copy of the findings to which this witness would testify. At trial, there was overwhelming evidence of Appellant's guilt and very little meaningful evidence put on of his alleged intoxication or legal insanity at the time of the murder.

¶ 64 Finally, Appellant contends that the jury relied on Goodman's report and testimony and the State's characterization of it to assess the death penalty. He asserts that, as a result, the sentence was the product of ambush and arbitrariness in violation of his constitutional rights.[12] We disagree for the reasons outlined above. Accordingly, we find that this proposition of error is without merit. Furthermore, we hold that the attorney-client privilege should prohibit prosecutorial discovery and use of information generated by non-witness psychiatric experts when such experts are consulted by criminal defendants in the course of preparing for trial or a capital sentencing proceeding. This protection should be applied prospectively.

¶ 65 In his tenth proposition of error, Appellant asserts that throughout the proceedings the prosecution's conduct was so inappropriate as to affect the outcome of the trial, thereby denying him his constitutional right to a fair trial. Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such as to deprive the defendant of a fair trial. *Langdell v. State*, 1982 OK CR 205, ¶ 7, 657 P.2d 162, 164.

¶ 66 In the first of Appellant's seven sub-propositions, he complains that the prosecution improperly attempted to define "beyond a reasonable doubt" for the jury during *voir dire*. Essentially none of the passages referred to in this sub-proposition were met with an objection. Therefore, all but plain error has been waived. *Vaughn v. State*, 1985 OK CR 29, ¶ 10, 697 P.2d 963, 967.

¶ 67 Upon review of the complained of passages, the Court fails to see where the prosecutor attempted to define "reasonable doubt." The State simply asked the potential jurors if they would hold the State to that burden and not a higher burden. It has been held previously by this Court that this type of argument is not an impermissible attempt to define "reasonable doubt." *Diaz v. State*, 1986 OK CR 167, ¶¶ 18–19, 728 P.2d 503, 511. Therefore, this sub-proposition fails.

¶ 68 Next, Appellant argues that the prosecution improperly sought to invoke sympathy for the victim, Shirley Mann, throughout the course of the trial. Once again, many of the statements now complained of were not met with a contemporaneous objection. It is settled law that counsel for both the State and the defense have the right to fully discuss the evidence from their standpoint, and any inferences or deductions arising from that evidence. The prosecution is entitled to make reasonable comments on interpretation of the evidence. *Holt v. State*, 1981 OK CR 58, ¶ 6, 628 P.2d 1170, 1171; *Glidewell v. State*, 1981 OK CR 39, ¶ 4, 626 P.2d 1351, 1353. The remarks merely verified earlier testimony and the statements were supported by the evidence. Upon review of the alleged improper com-

12. Appellant argues that under *Ake v. Oklahoma*, 470 U.S. at 83, 105 S.Ct. at 1091, Dr. Goodman should have not only conducted a psychiatric examination of Appellant but also assisted in evaluation, preparation and presentation of the defense. *See also United States v. Sloan*, 776 F.2d 926, 929 (10th Cir.1985). But note, a similar issue was raised in Appellant's first appeal and his case, then, was found to be distinguishable from *Ake*. *Van White v. State*, 1988 OK CR at ¶ 8, 752 P.2d 814, 818.

ments, we find that they were reasonable inferences based upon the evidence. *See Nguyen v. State,* 1988 OK CR 240, ¶ 18, 769 P.2d 167, 172, *cert. denied,* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989), *overruled on other grounds, Green v. State,* 1993 OK CR 30, ¶ 9, 862 P.2d 1271, 1273. This sub-proposition is without merit.

¶ 69 Appellant next claims that the prosecutor improperly invoked societal alarm and insinuated the jury had a duty to sentence him to death. These statements were not objected to at trial, therefore, any error has been waived. *See LaFevers v. State,* 1991 OK CR 97, ¶ 37, 819 P.2d 1362, 1370. Furthermore, arguments to the jury that they have an "obligation" to come back with a guilty verdict have been held to be proper argument based on the evidence. *Lawson v. State,* 1987 OK CR 140, ¶ 13, 739 P.2d 1006, 1008–1009. The prosecutor has every right to set forth his contention that the defendant is guilty as charged. *Mills v. State,* 1979 OK CR 22, ¶ 37, 594 P.2d 374, 382, *overruled on other grounds, Langham v. State,* 1990 OK CR 9, ¶ 6, 787 P.2d 1279, 1281. The prosecution may argue that life imprisonment is not enough. *Nguyen,* 1988 OK CR 240 at ¶ 21, 769 P.2d at 172. In any event, the prosecution may recommend the punishment to be given. Accordingly, this argument fails.

¶ 70 In his fourth sub-proposition, Appellant complains that the prosecutor denigrated a defense witness and gave a personal opinion about witness credibility. Specifically, Appellant asserts the prosecution's comments on Dr. Donica's testimony constituted an impermissible denigration of a defense witness, and invaded the province of the jury by "providing his own personal assessment of witness veracity." Again, all but plain error has been waived, as the alleged improper passages were not objected to at trial. *LaFevers,* 1991 OK CR 97 at ¶ 37, 819 P.2d at 1370.

¶ 71 This Court has held that a prosecutor's comments on the quality of the defense case and an exhortation to the jury to return a verdict of guilty were reasonable inferences and comments on the evidence. *Dean v. State,* 1989 OK CR 40, ¶ 11, 778 P.2d 476, 478–479. Even ill advised comments to defense counsel do not warrant a mistrial. *Leigh v. State,* 1985 OK CR 41, ¶ 16, 698 P.2d 936, 939. We find the subject remarks were proper comments on the evidence.

¶ 72 Appellant next asserts that it was reversible error for the prosecution to ask four lay witnesses their opinion with respect to Appellant's sanity. Most of the alleged improper passages are complained of for the first time on appeal. Therefore, all but plain error has been waived. The testimony of lay witnesses is admissible in a determination of sanity. *Kiser v. State,* 1989 OK CR 76, ¶ 19, 782 P.2d 405, 407. The jury must determine the weight and credibility of both expert and lay witnesses in a sanity determination. *Clark v. State,* 1986 OK CR 65, ¶ 17, 718 P.2d 375, 378.[13] Lay witnesses testified as to what they observed of Appellant over a period of time. An expert, at times, may be given inaccurate or misleading information from an accused and therefore, lay witnesses may be far better than the expert. We find the testimony elicited here was proper and this sub-proposition is without merit.

¶ 73 In his sixth sub-proposition, Appellant contends that the prosecution improperly bolstered Geraldine Dennis' testimony by implying that she was an expert. Yet again, there were no contemporaneous objections made to this testimony. All but plain error has been waived.[14] *Vaughn,* 1985 OK CR 29 at ¶ 10, 697 P.2d at 967. Ms. Dennis was also attacked and left for dead during the subject incident, her testimony was certainly relevant and proper with respect to her own observations of Appellant. We find no error here.

---

13. Perhaps the questions could have been worded more appropriately. However, the testimony elicited was within the permissible realm.

14. It should also be noted that the defense affirmatively relied upon the same complained of inquiries of Ms. Dennis' background as a psychiatric nurse in their own examination of her.

¶ 74 Finally, we address Appellant's seventh and last sub-proposition relating to prosecutorial misconduct. Here, he asserts that the prosecution improperly referred to Appellant's first trial. After a complete review of the record, we find no such reference. This sub-proposition is without merit.

¶ 75 In Appellant's eleventh proposition of error, he contends that he was denied a fair trial because of the introduction of prejudicial other-crimes testimony regarding the attempted rape of the decedent during the fatal attack. Evidence as to the scope of the crime is always relevant if for no other purpose than to help the jury assess the appropriate punishment considering the seriousness of the crime. *Aumiller v. State*, 1986 OK CR 90, ¶ 5, 720 P.2d 347, 349. Furthermore, "[o]ccurrences forming an integral part of the transaction, formerly called the *res gestae*, are those that complete the picture of the offense charged." *Gaines v. State*, 1986 OK CR 125, ¶ 5, 724 P.2d 260, 261. Appellant stated in his confession that he started to rape Mrs. Mann but did not complete the act because he was afraid that if he hung around the shop, he might be apprehended. This statement, and not the fact of the attempted rape itself, was crucial to the State's proof of premeditation.

¶ 76 The sexual attack was properly admitted into evidence as part of the *res gestae* of the murder. The State did not overemphasize the sexual attack during closing, but used the defendant's statements with respect to the attempted rape to rebut his claim of insanity and lack of premeditation. This proposition of error fails.

¶ 77 Appellant's twelfth proposition of error asserts that his rights to a fair trial were violated by the admission of gruesome photographs of the victim, Shirley Mann. It is well settled law in Oklahoma that the admission or denial of photographs lies within the trial court's discretion, and that discretion will only be disturbed upon a showing of abuse. *See McCormick v. State*, 1993 OK CR 6, ¶ 10, 845 P.2d 896, 898; *Tibbs v. State*, 1991 OK CR 115, ¶ 24, 819 P.2d 1372, 1379. The rule of law which continues to be followed was set down in *Lampkin v.*

*State*, 1991 OK CR 33, ¶ 7, 808 P.2d 694, 696 and is as follows:

> ... the decision to admit photographs into evidence is within the sound discretion of the trial court and will be disturbed only upon a showing of abuse of discretion. *Lamb v. State*, 1988 OK CR 296, 767 P.2d 887, 891. Further, photographs are admissible if they are relevant and their probative value is not outweighed by their prejudicial value. *Id.*

¶ 78 We find that no prejudice was created here. In the instant case, one color photograph and four color slides of the murder victim made subsequent to her death were shown to the jury. Appellant claims the pictures were unfairly gruesome and should not have been admitted into evidence. However, "[g]ruesome crimes result in gruesome pictures." *McCormick*, 1993 OK CR 6 at ¶ 12, 845 P.2d at 898. "The only consideration to be made is whether the pictures are unnecessarily hideous, such that the impact on the jury can be said to be unfair." *Id.* The pictures were used to depict the crime scene and the location and the nature of the wounds to the victim. Further, the four post-autopsy slides of her head and neck only, show no autopsy stitches or work and the wounds are cleaned up. The slides are, therefore, more clinical in nature and less gruesome than crime scene photographs. A photograph's probative value may be manifested in numerous ways encompassing the character and location of wounds, the crime scene, and corroborating medical examiner testimony. *Fritz v. State*, 1991 OK CR 62, ¶ 26, 811 P.2d 1353, 1365.

¶ 79 In the instant case, the trial court did not abuse its discretion and properly admitted the single photograph and the four slides. Given the overwhelming evidence of Appellant's guilt, we find that no prejudice resulted from this admission.

¶ 80 Appellant, in his thirteenth proposition, asserts that the trial court committed reversible error by admitting a letter Appellant wrote to his parents while incarcerated in the county jail. He argues that this letter constituted improper rebuttal and was obtained in violation of the Fourth and Fourteenth Amendments. The letter was

confiscated when all of Appellant's personal belongings were removed from his jail cell after his alleged attempt at suicide.

¶ 81 The United States Supreme Court has made it clear that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). In addition, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment is not violated when a state employee deprives an individual of property, either intentionally or negligently, provided there are meaningful post-deprivation remedies available. *Hudson*, 468 U.S. at 531, 104 S.Ct. at 3203. Accordingly, we find the confiscation of Appellant's letter from his jail cell was not improper.

■■■ ¶ 82 The State used the letter as rebuttal evidence to show that Appellant understood what was happening to him and was able to act in a sane manner. Therefore, it was proper to counter Appellant's insanity arguments. *See DeVooght v. State*, 1986 OK CR 100, ¶ 39, 722 P.2d 705, 713. Even if error were present here, this rebuttal evidence was cumulative in nature. Accordingly, we find it to be harmless.

## FIRST STAGE INSTRUCTIONS

¶ 83 In his second proposition of error, Appellant contends that the trial court erred by not instructing the jury on the lesser included offense of first degree diminished capacity manslaughter, and by not instructing the jury on voluntary intoxication. The evidence presented at trial did not support an instruction on voluntary intoxication, nor on first degree "diminished capacity" manslaughter.

¶ 84 This Court held in *Barr v. State*, 1988 OK CR 256, ¶ 10, 763 P.2d 1184, 1187 that there was no error in the trial court's failure to *sua sponte* instruct the jury on voluntary intoxication. The Court stated the following:

"The question of voluntary intoxication should not be submitted to the jury unless the defendant presents sufficient evidence, or the evidence of the prosecution raises the possibility, that the defendant was 'so

far under the influence of an intoxicating liquor, drug, or other substance that his/her passions [were] visibly excited or his/her judgment [was] impaired.' "

*Id.* at 1187, *quoting* OUJI–CR 736 and Commission Comment to OUJI–CR 735.

■■■ ¶ 85 The evidence presented by the defense at trial supported a finding that Appellant was a substance abuser, not that he was impaired at the time of the murder. In fact, there was conflicting evidence of Appellant's level of intoxication at the time of the murder. The only evidence supporting a conclusion that Appellant was intoxicated at the time of the murder came from Appellant's own statements to the police the day *after* the murder. Moreover, while Appellant stated that he was high from sniffing paint at the time of the murderous attacks, he remembered the incident in detail. Further, he recounted actions he took at the time which suggest coherent decision-making on his part, given the context of events. The evidence was not sufficient to warrant an instruction on voluntary intoxication. *See Lamb v. State*, 1988 OK CR 296, ¶ 14, 767 P.2d 887, 890.

■■■ ¶ 86 Appellant, as part of this proposition, asserts that the trial court erred in denying his request for an instruction on first degree diminished capacity manslaughter. The evidence did not support such a jury instruction. "The jury is to be instructed on every degree of homicide which the evidence in any reasonable view suggests." *Id., citing Lee v. State*, 1985 OK CR 62, 700 P.2d 1017. *See also Hooks v. State*, 1993 OK CR 41, ¶ 20, 862 P.2d 1273, 1280, *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994).

■■■ ¶ 87 Finally, Appellant argues that the trial court's failure to instruct on voluntary intoxication in the first stage precluded his jury from considering and giving effect to that evidence as mitigation against imposition of the death penalty. Jury instruction No. 6 stated the following:

Evidence has been offered as to the following mitigating circumstance: The defendant was under the influence of mental or emotional disturbance. Whether this cir-

cumstance existed, and whether this circumstance is mitigating must be decided by you.

The jury could have considered Appellant's alleged intoxication as mitigating evidence if they had so found. There was little evidence to support this claim at trial. It is likely that the jury simply did not give this claim much credence, particularly in light of some of the contradictory testimony. Accordingly, we find that Appellant's second proposition of error must fail.

¶ 88 In Appellant's sixth proposition of error, he argues that he was denied due process of law and a reliable sentencing procedure by improper instructions and procedure on his insanity defense. This argument is without merit.

▆▆▆▆ ¶ 89 In Oklahoma, when the defendant produces sufficient evidence to raise a reasonable doubt of his sanity, the State then has the burden of proving sanity beyond a reasonable doubt. *Ballou v. State,* 1985 OK CR 10, ¶ 6, 694 P.2d 949, 951. Whether the State has carried its burden of proving the Appellant's sanity at the time of the commission of the crime is a question of fact for the jury. *Id.* This procedure has been approved by this Court. *See Brewer v. State,* 1986 OK CR 55, ¶¶ 17–19, 718 P.2d 354, 361, *cert. denied,* 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986). It is the function of the jury to determine whether the defendant has presented evidence sufficient to raise a reasonable doubt as to his sanity at the time of the offense. If not the presumption of sanity prevails. *Lamb,* 767 P.2d at 891.

¶ 90 Appellant's argument fails on precedent. Oklahoma law on insanity and the shifting burden of proof have been consistently upheld on review by this Court. *Maghe,* 1980 OK CR 100 at ¶ 17, 620 P.2d at 436; *Garrett v. State,* 1978 OK CR 126, ¶ 9, 586 P.2d 754, 755–756. The jury was correctly instructed by the trial court on the burdens of proof. Furthermore, Appellant's assertion that the State was effectively relieved of its burden by the use of the subject instructions is erroneous. Accordingly, this proposition of error fails.

▆▆ ¶ 91 For his fifteenth proposition of error, Appellant contends that the trial court's "anti-sympathy" instruction combined with prosecutorial argument and incomplete instructions concerning mitigating evidence violated his constitutional rights. This argument was rejected by the United States Supreme Court in *Saffle v. Parks,* 494 U.S. 484, 490–492, 110 S.Ct. 1257, 1261–1262, 108 L.Ed.2d 415 (1990). This Court has also rejected the argument. *See Fox v. State,* 1989 OK CR 51, ¶ 56, 779 P.2d 562, 574–575 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). *See also Mayes v. State,* 1994 OK CR 44, ¶ 147, 887 P.2d 1288, 1319, *cert. denied,* 513 U.S. 1194, 115 S.Ct. 1260, 131 L.Ed.2d 140 (1995). Accordingly, this proposition of error must fail.

## SECOND STAGE ISSUES

▆▆ ¶ 92 In his first proposition of error, Appellant asserts that his sentence of death must be vacated because of the trial court's refusal to instruct the jury on all sentencing options provided by law. We agree. Appellant refers particularly to the alternative sentencing option of life imprisonment without parole. The Mann homicide occurred on December 22, 1982. However, Appellant was re-tried for this crime, convicted and sentenced in May of 1989, eighteen months after the effective date of life imprisonment without parole as a sentencing option for first degree murder. *See* 21 O.S.Supp.1988, §§ 701.9 and 701.10; Okla. Sess. Laws, 96, § 7, p. 361, effective November 1, 1987. Moreover, in light of this Court's precedent, Appellant's sentence must be vacated. *See Salazar v. State,* 1993 OK CR 21, ¶¶ 31–46, 852 P.2d 729, 737–741; *See also Hain v. State,* 1993 OK CR 22, ¶¶ 48–49, 852 P.2d 744, 752–753, *cert. denied,* 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994).

¶ 93 Because we find reversible error as to Appellant's first proposition of error, a new sentencing hearing must be conducted. Therefore, we will discuss the remaining propositions of error only to the extent that we may provide guidance to the trial court for re-sentencing and to avoid further error in a new sentencing proceeding.

¶ 94 Appellant's seventh proposition of error, even though he failed to object or request an instruction, may also warrant a closer look. He argues that the failure to give a crucial instruction on mitigation deprived the jury of the ability to properly consider relevant mitigating evidence. The instruction in question is OUJI–CR 438, which defines mitigating circumstances and directs the jury to make their own determination as to what is mitigating. Ironically, the use of this same instruction has been frequently objected to by the defense bar because it is worded with permissive rather than mandatory language. In the instant case, some mitigating instructions were given. The subject instruction would have helped the jury more meaningfully understand what may be considered as mitigating evidence. The failure to use this instruction, in light of the other instructions that were provided, was not necessarily a fatal flaw. However, because this case is remanded for re-sentencing, the trial court should find the use of OUJI–CR 438 appropriate.

## CONCLUSION

¶ 95 This case must be sent back for re-sentencing because of the failure to instruct on the Life Without Parole sentencing option. The jury will not have to determine guilt but only the three sentencing options: Life, Life Without Parole or Death.

STRUBHAR, V.P.J.: concurs.

CHAPEL, P.J., and LUMPKIN, J.: concur in part/dissent in part.

LANE, J: concurs in results.

CHAPEL, P.J., concurring in part/dissenting in part:

¶ 1 I agree that this case must be remanded for resentencing. However, I cannot

agree that Stephen Vann White's absence from his competency trial is harmless error. In Oklahoma, by statute a defendant is guaranteed the right to be personally present at each step of his trial if he is being prosecuted for a felony.[1] This includes the right to be present at one's competency trial.[2]

¶ 2 In this case, defense counsel agreed to conduct the final day of the competency trial and receive the verdict in White's absence solely for the convenience of the Okmulgee County Sheriff. Nowhere on the record does it reflect that White participated or even acquiesced in this waiver of his right to be present. Thus, continuing his trial in his absence was an egregious violation of Oklahoma law. And as the majority points out, the right to be present at one's trial is not only statutory, but also a constitutional right.[3] Accordingly, I find White's absence also violated his State and Federal rights to Due Process of law.[4]

¶ 3 Up to this point, I am in full agreement with the majority. Error occurred, both statutory and constitutional. Where we part ways is in the determination that this error was harmless. The majority does a cursory analysis of the issue and decides White was not prejudiced. If this were the sole consideration, the constitutional and statutory guarantees that an accused must be present at all critical stages of trial would be rendered meaningless as long as there was sufficient evidence to support a conviction.

¶ 4 While most of the time we deem errors "harmless" when it can be said beyond a reasonable doubt that they did not affect the outcome of the trial, this cannot be the sole determining factor in whether relief is warranted. The question is whether the error

1. 22 O.S.1981, § 583; *Humphrey v. State,* 3 Okl. Cr. 504, 106 P. 978, 979 (1910).

2. 22 O.S.1991, § 1175.4(C) ("The person whose competency is in question **shall** have the right to be present . . . .") (emphasis added).

3. *Clark v. State,* 718 P.2d 375, 377 (Okl.Cr.1986) ("It is well settled that a defendant has both a statutory and a constitutional right to be present at all stages of his trial.").

4. OKLA CONST. art. II, § 7; *Rushen v. Spain,* 464 U.S. 114, 117, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983) (". . . the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant."); *Snyder v. Com. of Mass.,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934) (Fourteenth Amendment due process right to presence).

affected "substantial rights" of the parties.[5] Otherwise, errors like the one at issue here would always be harmless, since the evidence presented and thus the outcome of the trial would have been the same regardless of the defendant's presence. Accordingly, I would hold the defendant's absence without his consent deprived him of a substantial right and reverse this matter for a new competency trial.

LUMPKIN, Judge, concurring in part/dissenting in part:

¶ 1 I concur in the result of the Court's decision to affirm the conviction in this case. However, I disagree with the unsupported holding relating to Proposition V, Doctor Goodman's testimony. The Court accurately sets out the majority of the caselaw, including *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), where the U.S. Supreme Court held it is not error for the prosecution to call a defense psychiatric expert as a rebuttal witness due to the simple fact the defendant's privilege has been waived by the presentation of the defense at trial. The only restriction is the prosecution cannot inquire and the expert cannot relate any admissions made by the defendant as a part of the evaluation or treatment without a waiver of the right to counsel. *Id.* at 423–24, 107 S.Ct. at 2918. However, the Court then proceeds to disregard that caselaw, and without authority or analysis determines "as a matter of law ... the attorney-client privilege should prohibit prosecutorial discovery and use of information generated by non-witness psychiatric experts when such experts are consulted by criminal defendants in the course of preparing for trial or a capital sentencing proceeding." (Opinion at pg. 271). In reaching this conclusion, the majority has ignored the doctrine of waiver the federal courts have appropriately applied to this issue. *See Granviel v. Lynaugh*, 881 F.2d 185, 190 (5th Cir.1989). Once a defendant elects to present an insanity, or other psychological type defense, the privilege as to both the physician and attorney concerning the nature and findings of the offered

psychosis is waived. *Id.* Instead of following established caselaw and evidentiary rules, the majority seems to simply pull a desired result out of the air. Accordingly, I do not find any error in Dr. Goodman's testimony in this case.

¶ 2 I dissent to the Court's decision to remand for resentencing based on the law as set out in my separate opinions in *Salazar v. State*, 852 P.2d 729 (Okl.Cr.1993) and *Hain v. State*, 852 P.2d 744 (Okl.Cr.1993).

---

**5.** 20 O.S.1991, § 3001.1; *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967).